## Chicago & Northwestern Railway Co.

### v.

## Delos A. Montfort *et al.*

1. CARRIERS—*liability beyond their own lines.* Where goods are delivered to a railroad company for carriage, marked to a particular place, and beyond the terminus of their line of road, the company receiving the

goods are bound to carry them to the place of destination. To that extent is their undertaking at the common law, but they may, by express agreement, limit their liability to their own route and to its terminus.

2. Where, in such case, the shipper takes a receipt for the goods, from the company receiving them, containing conditions restricting their liability to their own line of road, if he accepts it with a full knowledge of such conditions and intending to assent to them, it becomes his contract as fully as if he had signed it.

3. But whether the shipper accepted the receipt with a knowledge of such restriction, and with the intention to assent to it, is a question of fact to be determined by the jury.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Mr. GEORGE WILLARD and Mr. B. C. COOK, for the appellants.

Mr. A. T. EWING, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action originally brought before a justice of the peace, against appellants as common carriers, for the loss of goods delivered to their care, to be carried from Chicago "as per bill of lading, to be issued by W. W. Chandler, agent."

The bill of lading issued by Chandler, is as follows:

CHICAGO & NORTHWESTERN RAILWAY COMPANY,
No. 425.                    CHICAGO STATION, May 11, 1870.

Received from Tourtelot Bros. the following described packages in apparent good order, (contents and value unknown,) consigned to C. J. Montfort & Co. of St. Paul, State of Minnesota, marked and numbered as per margin, to be transported over the lines of this railway to the company's freight station at LaCrosse, and delivered in good order to the consignee or owner at said station, or to such company or carriers (if the same are to be forwarded beyond said station) whose line may be considered a part of the route to the place of destination of said goods or packages, it being distinctly

understood that the responsibility of this company as a common carrier shall cease at the station where delivered to such person or carrier; but it guarantees that the rate of freight for transportation of said packages from the place of shipment to St. Paul, shall not exceed $1 per cwt., and charges advanced by this company.

Upon the following conditions:

These conditions need not be noticed, except the following:

"The responsibility of this company, as carriers, to terminate on the delivery of the freight as per this bill of lading, to the company whose line may be considered a part of the route to the place of destination of said goods or packages."

A recovery was had by the plaintiff, and an appeal taken to the circuit court, where, upon trial had, the plaintiff obtained judgment, to reverse which the defendant appeals to this court.

The only questions made by appellants were, was it competent for the railroad company to limit their liability as common carriers, to their own line of road, by special agreement; and, second, does the fact that the goods in question were marked C. J. Montfort, St. Paul, Minnesota, *via.* LaCrosse, prove that the railroad company contracted to be responsible for the goods beyond the limits of their own line, notwithstanding the stipulations of the bill of lading.

These questions have been answered by this court, the first by the case of the *Illinois Central Railroad Co.* v. *Morrison,* 19 Ill. 136, where it was held that railroad companies were common carriers, and as such, have a right to restrict their liability by such contract as may be specially agreed upon, they remaining liable for gross neglect or wilful misfeasance.

The second is answered by the case of the *Illinois Central Railroad Co.* v. *Frankenburgh et al.* 54 ib. 88, wherein it was held, where railroad companies receive goods to convey, marked to a particular place, they are bound, *prima facie,* under an implied agreement from the mark or direction, to carry

12—60th Ill.

to, and deliver at that place, although it be a place beyond their own lines of carriage. This was held to be the rule at common law. It was further held that the carrier might, by special contract with the shipper, limit his liability to such damage or loss as might arise on his own line of carriage ; that it was permitted them to relieve themselves from this common law liability by special contract.

That case further holds, if a shipper takes a receipt for his goods containing conditions restricting the liability of the carrier, in such way as is competent for the carrier to do, with a full knowledge on the part of the shipper of such conditions, and intending to assent to the restrictions contained in them, it becomes his contract as fully as if he had signed it. But the question is for the jury, did the shipper accept the receipt with a knowledge of the restrictions and conditions, and with the intention to assent to them ? To the same effect is the ruling in *Adams Express Co.* v. *Haynes,* 42 ib. 89.

The doctrine of this court is, when goods are delivered, marked to a particular place, and beyond the terminus of the line of the railroad company receiving the goods, the receiving company are bound to carry the goods to the place of destination ; that, to this extent, is their undertaking at the common law, but that, by express agreement, they may limit their liability to their own route and to its terminus.

Whether this receipt, signed by W. W. Chandler, agent, was accepted by the shipper, with a knowledge of the restrictions and conditions contained in it, and with the intention to assent to them, was a question of fact for the jury, who could have found, under the testimony, no other way than they did find if they believed the witness Tourtelot, one of the consignors, who testified that, a day or two after their drayman delivered the goods to the defendants, he went to the defendants' office and called for a duplicate of the receipt, which he called a bill of lading. The clerk gave him the bill of lading in evidence, and he sent it to the plaintiffs at St. Paul. He did not read

the bill of lading, or any part of it.    He supposed he was getting a copy of the receipt ; he never consented to any of the conditions or limitations contained in the bill of lading.

The proof, therefore, fails to show there was any contract touching the common law liability of the carriers.

It is insisted, however, by appellants, that by an act of congress, approved March 3, 1855, a carrier, by ships or vessels, is not liable for loss resulting from fires happening to, or on board such ship or vessel, unless such fire is the result of the design or neglect of the carrier.

The distinguished counsel who makes this point should have known the act in question has no application whatever to vessels used in rivers or inland navigation.  Such is the express provision of the act.  9 U. S. Statutes at Large, 636, section 7.

The judgment is affirmed.

*Judgment affirmed.*