ROBINSON BROS. & GIFFORD v. THE MERCHANTS' DESPATCH TRANSPORTATION COMPANY.

1. **Common Carrier**: CONTRACT OF AFFREIGHTMENT: PRINCIPAL AND AGENT. A contract of affreightment made by the consignor for the consignee is binding upon the latter, and in the absence of fraud or mistake he will be conclusively presumed to know its stipulations.

2. ———: ———: VALID IN ANOTHER STATE. If such a contract is valid under the laws of the State where it is made, it will be binding upon the consignee who may be the resident of another State.

3. ———: ———: BILL OF LADING. Where a contract of affreightment is evidenced by a bill of lading which is partly printed and partly written the contract is to be gathered from the whole instrument, and a stipulation that the carrier will transport the mercandise "without transfer, in cars owned and controlled by the company" constitutes a part thereof, a breach of which, occasioning a loss of the goods by fire, does not entitle the carrier to the protection of another stipulation of the bill of lading, that the carrier will not be responsible for such a loss. SEEVERS, J., *dissenting*.

4. ———: ———: DAMAGES. In an action for damages for the loss of goods under such a contract the plaintiff is entitled to interest on their value, at six per cent, from the time when they ought to have been delivered.

Robinson Bros. & Gifford v. The Merchants' Despatch Transportation Co.

*Appeal from Linn Circuit Court.*

TUESDAY, APRIL 3.

ON the 29th day of September, 1871, D. G. Rawson & Co. delivered to the defendant at Worcester, Mass., for shipment, six cases of boots consigned to the plaintiffs at Cedar Rapids, Iowa. A bill of lading, or shipping contract, was delivered by the agent of defendant to Rawson & Co., of which the following is a copy:

MERCHANTS' DESPATCH TRANSPORTATION COMPANY. Fast freight line from New York, Boston, Albany, and all New England points, to the west, northwest and southwest, through without transfer, in cars owned and controlled by the Company.

New York Office, 365 & 367 Broadway, H. W. Carr, Agent; Boston Office, 17 Court Street, Otis Kimball, Agent; Albany Office 705 Broadway, J. W. Skinner, Agent.

J. FARNSWORTH, Ass't Sup't,                     J. CHITTENDEN, Supt.,
        Cleveland, Ohio.                 365 and 367 Broadway, New York.

        SAM'L FINLAY, Ass't Sup't, 17 Court Street, Boston.

| H. P. NICHOLS, Agent, Worcester, Mass. | WORCESTER, MASS., September 29th, 1871. |
|---|---|
| Contents and Value of Packages Unknown. | Received of D. G. Rawson & Co., in apparent good order (except as noted), the following packages, marked as in the margin, viz: |
| MARKS. | |
| Robinson, Bros. & Gifford, Cedar Rapids, Iowa. No. 8839 to 8844. | *Six (6) Cases.* (Duplicate.) |
| Merchants' Despatch. | To be forwarded in like good order (dangers of navigation, collisions and fire, and loss occasioned by mob, riot, insurrection or rebellion, and all dangers incident to Railroad Transportation excepted), to Cedar Rapids, Iowa, Depot only, he or they paying freight and charges for the same, as below: |
| . The name of the consignee and destination of all freight must be plainly and distinctly marked; and in no case will damage be allowed for wrong delivery or loss caused by defective marking, with initials, or where the marks or directions on packages are made on paper or cards. | If 1st Class, $1.35 cts. per 100 lbs. Charges advanced at Worcester, $.........Weight subject to correction. Subject to the terms and Classification as below, and to difference in Classifications adopted by Western Roads, and to the Government Tax.    For the Company. H. P. NICHOLS, Agent. |

The plaintiffs allege in their petition, and amended petition, a non-performance of the contract by failing to deliver the goods, and that the bill of lading was not made at the time the goods were delivered to defendant, but was subsequently delivered to plaintiff's consignors, and that they without

examination, excepting to note the correctness of the description of the boxes and address, transmitted the bill of lading to the plaintiffs by mail, and that neither the plaintiffs nor the consignors knew of the limitation of the contract as to loss by fire till after they learned defendant claimed exemption from liability by reason thereof. Judgment is asked against defendant, for the value of the goods and interest.

The answer admits that defendant received from D. G. Rawson & Co. certain merchandise to be transported to Cedar Rapids, in pursuance of the contract set up in the petition, and avers that said merchandise was destroyed by fire on the 8th and 9th days of October, 1871, at the city of Chicago, without fault on the part of defendant.

There was trial by the court and judgment for the plaintiffs, for the value of the goods and interest. Defendant appeals.

*West & Eastman*, for appellants.

*R. H. Gillmore*, for appellee.

ROTHROCK, J.—I. A question is made as to the time at which the bill of lading was delivered to Rawson & Co. The actual delivery of the goods was made by one Henry, the drayman of Rawson & Co. He testifies that he asked for a bill of lading and it was delivered to him. We must assume from this that it was delivered at the time of the delivery of the goods to the defendant; and a delivery to the drayman of Rawson & Co. was equivalent to a delivery to them.

II. The plaintiffs further insist that the limitation in the contract as to loss by fire was not known to them at' the time of shipment. This was a transaction done in the ordinary and usual course of business. Rawson & Co. undertook to ship the goods in question to plaintiffs, at plaintiffs' request. Whatever contract of shipment Rawson & Co. made is binding on the plaintiffs, and the plaintiffs cannot avoid it by showing that Rawson & Co. received and forwarded it without examination. In the absence of fraud or mistake the shipper will be conclusively presumed to know the stipulations contained in

1. COMMON carrier: contract of affreightment: principal and agent.

a contract of affreightment. He cannot be permitted to show that he was ignorant of its contents. *Mulligan v. Ill. Cent. Railway*, 36 Iowa, 181, and cases there cited.

III. This contract of shipment was made in the State of Massachusetts, and it is conceded by counsel for plaintiffs

2. ——: ——: valid in another state. that the limitation of defendant's liability as a common carrier could lawfully be made, and is binding, provided it be held to be the contract of plaintiffs, entered into at the time of the delivery of the goods. As we hold that it was a valid contract, binding on the plaintiffs, the remaining question in the case is as to the defendant's liability for the loss of the goods, by reason of alleged negligence or breach of the contract.

The evidence in the case shows that the goods in question were delivered to the defendant on the 29th day of September, for immediate shipment. The shipment was made by way of Albany, New York, from which last named place they were shipped to Chicago, on the 3rd day of October. They arrived in Chicago on Saturday, the 7th of October, at 7:50 P. M., and were unloaded into the Despatch Freight House of the Michigan Central Railway Co., and on Sunday night, October 8th, the said freight house and its contents, including the goods in question, were wholly consumed by fire.

It will not be claimed that the limitation in the contract exempting the defendant from loss by fire is an exemption

3. ——: ——: bill of lading. at all events. It was the defendant's duty to properly perform the other conditions and stipulations of the contract, and if by reason of failure in this respect the goods were lost, even by fire, the defendant would be liable. For example, if it had been stipulated in the contract that the goods were to be shipped by a certain route, and they were shipped by another route, and destroyed by fire while *in transitu*, the defendant would be liable for the loss unless it could show that the loss must have occurred from the same cause if the goods had been shipped by the route designated in the contract.

This contract, we take it, was all on one piece of paper, and the evidence shows it was partly printed and partly written.

There is nothing in the language contained in the paper indicating that any part of the instrument is not to be considered as part of the contract. An examination of it, as contained in the foregoing statement of facts, will show that the defendant undertook to ship through "*without transfer, in cars owned and controlled by the company.*" It may be said that this is a mere caption to the paper in the nature of an advertisement. It cannot be so regarded. There is nothing in the paper itself indicating that it was so intended, and without the first paragraph there would be no obligation binding on the defendant, unless it could be supplied by extrinsic evidence. There is no other statement made as to what company made the contract, than that contained in the first line. The words "Merchants' Despatch," on the left margin, standing alone, as they do, indicate nothing. We think a fair construction of this contract is that the Merchants' Despatch Transportation Company, a fast freight line from New York, Boston, Albany, and all New England points, to the west, northwest and southwest, shipping through without transfer, in cars owned and controlled by the company, received of D. G. Rawson & Co. six cases, to be forwarded to Cedar Rapids, Iowa. We regard this as an undertaking that these goods should be shipped through without transfer. It does not clearly appear, from the evidence, that the goods were transferred at Albany, and yet we think it is a fair inference, from the fact that a way-bill was made out at that place. It is conceded that there was a transfer at Chicago into a warehouse, where the goods were destroyed. Under the stipulations of this contract there was no right of transfer, and the fact that defendant placed the goods where it had no right to place them under the contract, and the further fact that they were destroyed while in the warehouse, at the very least, puts upon the defendant the burden of showing that the loss would have occurred from the same cause if the goods had remained in the car. No such showing is made in the case.

In *Magee v. The Camden & Amboy R. R. Co.*, 45 N. Y., it is held, "that when a carrier accepts goods to be carried, with a direction on the part of the owner to carry them in a

particular way, or by a specified route, he is bound to obey such directions, and if he attempts to perform his contract in a manner different from his undertaking he becomes an insurer and cannot avail himself of any exceptions in the contract. If it could be shown, in such case, that the loss must certainly have occurred from the same cause, and if there had been no default, misconduct or deviation, the carrier would be excused, but the burden of proof of this fact would be upon the carrier." See, also, *Davis v. Garrett*, 6 Bingham, 212; *Danuth v. Wade*, 2 Scam., 285; Story on Bailments, Sec. 509, and *Hunting v. Pepper*, 11 Pick., 41.

In *Davis v. Garrett, supra*, it is said that " no wrong doer can be allowed to apportion or qualify his own wrong; and that as a loss has actually happened whilst his wrongful act was in operation and force, and which is attributable to his wrongful act, he cannot set up as an answer to the action the bare possibility of a loss if his wrongful act had never been done. It might admit of a different construction if he could show not only that the same loss *might* have happened, but that it *must* have happened, if the act complained of had not been done."

It must be remembered that we are not now determining the question as to whether the defendant would have been liable for negligence, in the absence of any breach of the express terms of the contract. The question before us is, what are the rights of the parties where the carrier violates the terms of the contract in the mode of transportation.

The construction we place upon this contract is consistent with the general business and undertakings of companies of this character. They are organized as fast freight lines, and supposed to be doing their business over the railways of the country with speed and dispatch, and if transfers be made at connecting points this mode of shipment can have no preference over shipments by the ordinary railway carriage. We can readily perceive, at least, that one great object in the shipper using a fast freight line would be to avoid transfers and the delay and dangers incident thereto.

IV. A question is made as to the allowance of interest on

the value of the goods. The plaintiffs are entitled to interest
at 6 per cent per annum, from the time the goods
should have been delivered at Cedar Rapids. *Mote
v. Chicago & N. W. R. Co.*, 27 Iowa, 22.

4. ——: ——:
damages.

We are unable to determine from the abstract the date of
the judgment in the court below, but presume that interest
was calculated allowing a reasonable time for shipment between
Chicago and Cedar Rapids.

AFFIRMED.

ADAMS, J., took no part in the determination of the case.

SEEVERS, J., *dissenting*.—It is held by the majority of the
court that the caption or matter preceding the receipt or con-
tract forms a part of the latter. The reason given for this
holding is that it requires a reference to such caption to deter-
mine by whom the contract was made. This in my judgment
constitutes no reason for this holding, much less a sufficient
one. There are several (or at least such may be the case) of
these freighting companies, and it may be supposed the con-
tract was executed by the "Union Company," and if such
were the case, what company I ask would be bound thereby?
Clearly the defendant would not; but the company whose
agent signed the contract alone would be, and, if necessary,
evidence outside of the caption and contradictory thereto could
be introduced for the purpose of identifying the company by
whom the contract was executed.

Supposing then that the Union Company was identified
and shown to be the company by whom the contract was exe-
cuted, will it be claimed that as to it the caption constitutes a
part of such contract, if so, why, or for what reason, and if it
does not, why as to the defendant. These, to my mind, are
pertinent inquiries.

The caption is complete and has no reference to the con-
tract, nor the latter to it. At most, it may be said to be an
advertisement or inducement offered to shippers. But as the
plaintiffs do not aver or show that they had knowledge thereof
and relied thereon at the time of making the contract, it is

unnecessary to consider what would be the effect if such were the case.

The opinion holds, as a matter of law, that the unloading the goods at Chicago and placing them in a warehouse constitutes a breach of the contract. What is meant by "through without transfer?" To transfer, according to Webster, means to remove from one place to another. Evidently this was not the meaning contemplated by the parties, if so the goods never could have left the State of Massachusetts. It is well known and understood there are several distinct railroads between Worcester, Massachusetts, and Cedar Rapids, Iowa, over which the goods had to pass, and it is the transfer from the terminus of one road or depot to another that is referred to. In some places this transfer is made with wagons or drays. In others, by means of switches or side tracks, cars loaded with goods are transferred from one road to another. Can it be said as a matter of law the goods in question could not without a breach of the contract be unloaded and placed temporarily in a warehouse, and then reloaded in cars owned by the defendant and transferred from one road to another. If the caption be a part of the contract it must have a reasonable construction, and therefore it cannot be said to prohibit a transfer from one car to another. It may be that among shippers the word transfer, through usage or custom, has acquired a meaning which will warrant the construction placed thereon by the majority of the court. If so, such custom should have been averred and proved. But I strenuously object that the law attaches any such meaning thereto. I am, therefore, compelled to dissent from the foregoing opinion.