## J. D. McCARN v. THE INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY.

### No. 7372.

1.  **Railway Company may by Contract Limit its Liability to its Own Line.**—A railway company in a freight contract to a point beyond its own line may limit its liability to loss or injury caused upon its own line. A freight contract that the carrier shall not be held or deemed liable beyond its own line excepting to protect the through rate of freight named, is legal and will be enforced by the courts.

2.  **Same—Cases Adhered to.**—Railway v. Baird, 75 Texas, 256; Harris v. Howe, 74 Texas, 537; Hunter v. Railway, 76 Texas, 195; Railway v. Williams, 77 Texas, 121; Railway v. Adams, 78 Texas, 372, adhered to.

3.  **Same—Cases Discussed.**—Railway v. Vaughn, 16 S. W. Rep., 775; Railway v. Allison, 59 Texas, 193; Stewart v. Merchants Dispatch Co., 47 Iowa, 229; Bank v. Adams Express Co., 93 U. S., 174; Miles v. Cottle, 6 Bing., 743; Myrick v. Railway, 107 U. S., 106, discussed and reviewed.

APPEAL from Bexar.   Tried below before Hon. W. W. KING.
No statement is necessary.

*Edward Dwyer*, for appellant.—1. The railway company had authority and power to contract beyond their own line. Hutch. on Carr., sec. 151, and authorities cited.

2.   After a through contract is entered into, the succeeding or connecting carriers then become the agents of the receiving carrier. Hutch. on Carr., sec. 273, and authorities cited.

3.   The railway company having contracted to transport the cattle beyond its own line to the place of destination, as in this case it did, it could not exempt itself from liability caused by negligence of connecting carriers by a clause to that effect in the same contract, for the reason that by so doing the carrier limits its liability for negligence, and any such provision is inconsistent and against public policy and void. Laws. Con. of Carr., sec. 235; Whittaker's Smith on Neg., pp. 289, 290; 2 Redf. on Rys., p. 144; 2 Beach Law of Rys., sec. 920, and authorities cited; Transportation Co. v. Bloch Bros., 86 Tenn., 392; 6 Am. St. Rep., 847; Railway v. Allison, 59 Texas, 193; 3 Ct. App. C. C., secs. 8, 84; Ortt v. Railway, 31 N. W. Rep., 519, 520; Condict v. Railway, 54 N. Y., 500; Railway v. Merriman, 52 Ill., 123; Bank v. Express Co., 93 U. S., 174.

*Barnard & Green*, for appellee.—Although a common carrier has the power to unconditionally bind itself to transport and deliver freight at any point far beyond its own road, yet we insist that it does not owe to the public any duty to transport or deliver any freight beyond its own road; and when shippers desire it to do so, it can do it upon any con-

tract containing such reasonable terms, conditions, and limitations as the shipper and carrier may agree to, and such contract is valid and binding upon the parties to it. Williams v. Railway, 82 Texas, 553; Railway v. Baird, 75 Texas, 256; Harris v. Howe, 74 Texas, 537; Morse v. Branard, 41 Vt., 550; Stewart v. Transportation Co., 47 Iowa, 229; Railway v. Bank, 20 Wis., 122; Irwin v. Railway, 59 N. Y., 653; Laws. on Con. of Carr., sec. 236, and cases cited; Shelton v. Transportation Co., 59 N. Y., 258; Railway v. Frankenberg, 54 Ill., 88; Railway v. Wilcox, 84 Ill., 239.

STAYTON, Cʜɪᴇꜰ Jᴜsᴛɪᴄᴇ.—This action was brought by appellant to recover damages for injury alleged to have been caused to sixty head of cattle while in transit from San Antonio, Texas, to Chicago, in the State of Illinois.

The cause was tried without a jury, and the court found, that "the contract for shipment was a through contract from San Antonio, Texas, to Chicago, Illinois," but that the contract, among others, contained the following stipulation:

"And it is further stipulated and agreed between the parties hereto, that in case the live stock mentioned herein is to be transported over the road or roads of any other railway company, the said party of the first part [appellee] shall be released from liability of every kind after said live stock shall have left its road; and the party of the second part hereby so expressly stipulates and agrees; the understanding of both parties hereto being that the party of the first part shall not be held or deemed liable for anything beyond the line of the International & Great Northern Railway Company, excepting to protect the through rate of freight named herein."

The court further found, that no injury occurred to appellant's cattle while on appellee's line of railway, but that the cattle were injured while on a connecting line to which they had been delivered by appellee; and on these findings rendered a judgment against the plaintiff.

There is no statement of facts, and under the findings it must be conceded that appellee received the cattle under an agreement that they should be transported from San Antonio to Chicago; and the inference is that to do this it was necessary that they should pass over road or roads other than that of appellee. That in such a case a carrier may by contract protect itself against liability for loss not occurring on its own line, whether the shipment be wholly within this State or be interstate, we had deemed a settled question in this court. Railway v. Baird, 75 Texas, 256; Railway v. Williams, 77 Texas, 121; Hunter v. Railway, 76 Texas, 195; Railway v. Adams, 78 Texas, 372; Harris v. Howe, 74 Texas, 537.

This is the rule we understand to be recognized by nearly all of the English and American courts. Myrick v. Railway, 107 U. S., 102;

Pratt v. Railway, 95 U. S. 43; Railway v. Pratt, 22 Wall., 123; Tardos v. Railway, 35 La. Ann., 15; Railway v. Meyer, 78 Ala., 597; Railway v. Brumley, 5 Lea, 401; Mulligan v. Railway, 36 Iowa, 186; Railway v. Bank, 20 Wis., 134; Pendergast v. Express Co., 101 Mass., 120; Berg v. Railway, 30 Kansas, 562; Railway v. Larned, 103 Ill., 293; Field v. Railway, 71 Ill., 462; Express Co. v. Bank, 69 Pa. St., 394; Ins. Co. v. Wheeler, 49 N. Y., 616; Snider v. Express Co., 63 Mo., 382; Taylor v. Railway, 32 Ark., 399; Railway v. Avant, 80 Ga., 195; Schiff v. Railway, 52 How. Pr., 91; Transportation Co. v. Bloch Bros., 86 Tenn., 424; Railway v. Frankenberg, 54 Ill., 88; Burroughs v. Railway, 100 Mass., 26; Express Co. v. Rush, 24 Ind., 403; Railway v. Montford, 60 Ill., 175; Railway v. Wilcox, 84 Ill., 239; Forbes v. Railway, 7 Rich., 698; Aldridge v. Railway, 15 C. B. (N. S.), 582. Authorities upon this point might be multiplied. Even the case of Muschamp v. Railway (8 M. & W.), does not assert a different rule.

In England, and in some of the States of the Union, the mere receipt of goods to be carried to a destination beyond the line of the carrier who first receives them is held to evidence a contract to transport to such destination, while in others such receipt is not held to evidence a contract to convey beyond that carrier's line; but in the jurisdiction in which these diverse rulings are made there is a general concurrence of opinion in the proposition that the carrier may by special contract exempt itself from liability for an injury to freight resulting after it has gone into the hands of another carrier to be transported to destination.

The ground of concurrence is contract, which in some jurisdictions it is held is necessary to relieve from liability for the act of a connecting carrier over whose line the freight must or does pass to its destination; while in the other it is held, that in the absence of special contract no such liability rests on the receiving carrier for injuries occurring after he has safely passed the freight to a connecting carrier.

There are, however, a few cases in which it has been held, that a carrier under such a contract as that involved in this case is liable for an injury to freight after it has passed into the hands of a connecting carrier uninjured; and among these are found some decisions by the Court of Appeals of this State, with which we regret to differ.

In Railway v. Vaughn, 16 Southwestern Reporter, 775, the liability of a carrier was asserted, although the shipping contract was substantially the same as that involved in this case, and two cases are invoked as authority for the ruling in that case. One of these is the case of Railway v. Allison, decided by this court, 59 Texas, 193. In that case the plaintiff shipped from Galveston, Texas, to Chicago, Illinois, five cars of melons in cars adapted to their preservation and safe carriage, under an agreement that the melons should be transported in those cars

without change to Chicago. The evidence tended to show, that a connecting carrier to whom the cars were delivered placed the melons in other cars less adapted to their safe transportation, and that from this injury resulted. The shipping contract provided, that the railway company should not be liable for injury resulting from some causes enumerated, and that the company should not ''be liable for any damage, loss, or injury occurring not on its own railway.''

In disposing of the case it was said, that the averments of the petition were to the effect that there was an agreement that the melons should be carried to their destination in the cars in which they were first placed. There is a general expression in the opinion, that a carrier undertaking to carry freight to a destination beyond his own line can not contract that his responsibility shall terminate at the end of his own line; but to ascertain what a court actually does decide the facts on which the opinion is based must be considered, and no one paragraph in an opinion ought to be considered alone in arriving at the intention of the court. What this court did decide and intend to hold is so clearly expressed in the opinion in the case that we can but feel that had the whole opinion been read it ought not to have been understood to lay down any such rule as that it is cited to sustain.

It is said: ''The exemption from liability is, however, available only when the carrier forwards the goods consigned to him in the manner and by the route with reference to which the contract is made. If he deviates from his route or forwards the goods by a different conveyance from those contemplated by his agreement, he becomes an insurer of the goods, and can not avail himself of any exception made in his behalf in the contract. Fatman v. Railway, 2 Disney, 248; Robinson v. Transportation Co., 45 Iowa, 470.

''The contract to forward the melons in this case through from Galveston to Chicago on the cars on which they were loaded was an entirety.

''By changing the cars after they left appellant's road the risk of their safe transportation was assumed by its agents (the connecting line, where the change occurred) for the company, and it became liable notwithstanding the stipulation against damages beyond its own terminus.

''A case in point is that of Stewart v. Merchants Dispatch Company, 47 Iowa, 229. There goods were delivered to a transportation company at Worcester, Massachusetts, to be taken to Muscatine, Iowa, through without transfer, in cars owned and controlled by the company, and the contract contained a clause of exemption against liability for loss by fire. When the goods reached Chicago they were transferred to a warehouse and consumed by fire the same day. It was held that the company was liable for the loss, notwithstanding the exemption.

"The contract in this case, so far as the limitation of liability is concerned, *was in effect that the defendant company were not to be liable for any damage or loss occurring beyond their own route; provided the freight should not be changed from the cars in which it was shipped.*"

Instead of being a decision in favor of the rule for which it was cited, the direct holdings in the opinion, as well as all the implications, are so strongly to the contrary that the views of this court in that case ought not to be misunderstood.

The other case cited in support of the adverse rule is Bank v. Express Company, 93 United States, 174; but it seems to us the opinion asserts no such rule as it was cited to maintain. That case was simply this: The Southern Express Company and the Adams Express Company were engaged in the express business between New Orleans, Louisiana, and Louisville, Kentucky, the former transporting a package of money from New Orleans to Humboldt, Tennessee, where it was delivered to the latter for transportation to plaintiff at Louisville. There was a contract between the express companies by which they divided the compensation for such carriage in proportion to the distance a package might be transported by them respectively. Between Humboldt and Louisville both companies employed the same messenger, who was exclusively subject to the orders of the Southern Express Company when south of the northern boundary of the State of Tennessee, and to the orders of the Adams Express Company when north of that boundary. The shipping contract contained a clause exempting the carrier with which it was made from liability for loss "occasioned by the dangers of railway transportation, or ocean or river navigation, or by fire or storm," and it provided, that this should inure to the benefit of any person or company to whom the property might be delivered for transportation. When the package was delivered at Humboldt to the Adams Express Company's messenger, who was the messenger of both companies, he took charge of it and placed it in an iron safe, and deposited the safe in an apartment of the car set apart for the use of the express company, for transportation to Louisville. While the train to which the car containing the packages was attached was passing over a trestle, and while the package was in the exclusive charge of the messenger, the trestle over which the car was passing gave way and the car was thrown from the track, caught fire from the locomotive, and, with the money in the safe, was burned.

The action was brought against the Adams Express Company; and there being some evidence that the accident was caused by a defective trestle, the Circuit Court in effect instructed the jury, that the exceptions from liability found in the shipping contract exempted the express company from liability, even though the accident may have occurred through the negligence of the railway company employed to transport the express company's messenger and packages in his possession and custody.

From this statement it will be seen that no such question was presented in that case as arises in this. The claim was, that the shipping contract exempted the express company from liability for a loss occurring through the negligence of the railway company it had employed to transport its messenger and the packages in his exclusive possession. The court in effect held, that the railway company was the servant of the express company, for whose negligence the latter was responsible, and that for this reason, among others, the exemption from liability could not be allowed.

The express company had no means whereby to transport such packages as it might contract to transmit, other than such as it might hire from railway or other companies or persons engaged in the business of transportation; and if such companies or persons were not to be deemed the servants of the express company, that liability from which the common carrier can not escape by contract could not be fixed on either in such cases.

That the express company was a common carrier in that instance was not denied; and it was declared so to be by the court, but its claim was that it was relieved from liability by the contract. This the court denied, on the ground before stated, and then proceeded to show how the case would stand as to the carrier under the facts of the case, as follows: "Express companies make their own bargains with the companies they employ, while they keep the property in their own charge, usually attended by a messenger. It was so in the present case. The defendant had an arrangement with the railway company under which the packages of money, inclosed in an iron safe, were put into an apartment of a car set apart for the use of the express company, yet the safe containing the packages continued in the custody of the messenger. Therefore, as between the defendants and the railway company, it may be doubted whether the relation was that of a common carrier to his consignor, because the company had not the packages in charge. The apartment in the car was the defendant's for the time being; and if the defendant retained the custody of the packages carried, instead of trusting them to the company, the latter did not insure the carriage. Miles v. Cottle, 6 Bing., 743; Toners v. Railway, 7 Hill (N. Y.), 47; Redf. on Rys., sec. 74. * * * Had the packages been delivered to the charge of the railway company, without any stipulation for exemption from the ordinary liability of carriers, it would have been an insurer both to the express company and to the plaintiff. But as they were not so delivered, the right of the plaintiff to the extremest constant vigilance during all stages of the carriage is lost, if the defendants are not answerable for the negligence of the railway company, notwithstanding the exception in the bills of lading."

The same court, in the subsequent case of Myrick v. Railway, 107 United States, 106, said: "A railway company is a carrier of goods

for the public, and as such is bound to carry safely whatever goods are intrusted to it for transportation within the course of its business to the end of its route, and there deposit them in a suitable place for their owners or consignees. If the road of the company connects with other roads, and goods are received for transportation beyond the termination of its own line, there is superadded to its duty as a common carrier that of a forwarder by the connecting line—that is, to deliver safely the goods to such line, the next carrier on the route. This forwarding duty arises from the obligation implied in taking the goods for the point beyond its own line. The common law imposes no greater duty than this. If more is expected from the company receiving the shipment, there must be a special agreement for it. * * * The general doctrine, then, as to transportation by connecting lines, approved by this court, and also by a majority of the State courts, amounts to this: that each road, confining itself to its common law liability, is only bound, in the absence of a special contract, to safely carry over its own route and safely to deliver to the next connecting carrier, but that any one of the companies may agree that over the whole route its liability shall extend. In the absence of a special agreement to that effect such liability will not attach, and the agreement will not be inferred from doubtful expressions or loose language, but only from clear and satisfactory evidence.''

Can an obligation based alone on contract arise in the face of an express agreement that it shall not exist? That is the question involved in this and like cases, and to it, in our opinion, there can be but one answer. No court will assert that a common carrier is under obligation to carry or to contract to carry beyond its own line; but the decision to which we have referred, and any others that may be in harmony with it, in effect hold that the reception of freight destined and known to be destined to a point beyond the carrier's line who receives it, when the rate for through transit is fixed by that carrier, constitutes a contract by which that carrier assumes the duties and obligations of a common carrier for through transit, and thereby becomes liable for the negligence of every connecting carrier in the route, notwithstanding the initial carrier, in the paper which evidences the only contract, expressly contracts that it shall not be so bound. Such a construction of such a contract, it seems to us, violates every recognized canon of construction applicable to such a matter, and denies effect to the clearly expressed intention of the parties, when the law interposes no obstacle to the enforcement of such intention based on grounds of public policy or other reason.

It seems to us a mistake to assume that the initial carrier, throughout an entire route formed by two or more independent but connecting lines, becomes a common carrier when neither the rules of law nor the contract of the parties creates that relation, and upon this false assump-

tion to base the proposition that it can not exempt itself from liability for the negligence of a connecting carrier because the latter is the agent or servant of the former. If the relation be conceded, the proposition based on it would be a sequence; but that failing, the conclusion drawn from it falls.

Under the weight of American authority the contract in this case does not operate as a restriction on or exemption from liability; for to give that, liability, but for the contract, must have existed; while the contract was in effect an express agreement that no such liability existed or was intended or understood to exist.

Under English and some American decisions the contract would operate as a restriction on the initial carrier's common law liability, for in such a case, under that line of decisions, the liability would exist in the absence of the contract; but these decisions recognize the right of such a carrier to limit his liability to his own line; for in such cases there is always a liability resting on some one of the connecting carriers for injury resulting from the negligence of itself or servants, and in some jurisdictions the full common law liability will rest on some connecting carriers at all times. The latter would be true where freight was carried over two or more connecting lines all wholly within this State, for no one of them could restrict its own common law liability by contract, but the liability of connecting carriers for injury to freight while in the possession of one of them is not the common law liability.

It is unnecessary in this case to inquire what state of facts between connecting carriers would be sufficient to cast upon each the liability of a common carrier for the negligence of another, for no facts are found in the record making such an inquiry necessary.

There was no error in the proceedings, and the judgment will be affirmed.

*Affirmed.*

Delivered April 15, 1892.