GULF, COLORADO & SANTA FE RAILWAY COMPANY
v. A. N. WILBANKS.

No. 351.

1. **Connecting Lines—Partnership—Injury to Freight—Pleading—Charge of Court.**—If a partnership is alleged in a pleading, it is not necessary on the trial to offer evidence in support thereof, unless the opposite party by proper plea denies the same under oath. It was proper for the court in its charge to assume the existence of a copartnership between appellant and its connecting lines, when the same had been alleged by appellee, and had not been denied under oath by appellant.

2. **Same—Through Freight Shipment—Contract Limiting Liability.**—Under the allegations of the petition, appellant and its connecting lines were under one management, and were associated for the purpose of doing business as common carriers from Cleburne, Texas, the initial point of shipment, to Chicago, Ill., the terminal point of shipment. Such an arrangement made appellant and its associates practically one line, and each liable for the miscarriage or default of the other respecting through shipments of freight over such lines. In such case the initial carrier can not, by a stipulation in the contract of through shipment, restrict its liability for damages to such only as occur on its own line.

3. **Pleading—Practice—Exceptions on Appeal.**—No exception having been made in the court below to an allegation of partnership, which is good in the absence of a special exception thereto, it is too late to urge one on appeal.

4. **Connecting Lines—Ultra Vires Partnership—Estoppel.**—Where connecting carriers are partners in the transportation of freight, the contracting carrier, in an action against it for damages to through freight occurring on a connecting line, is estopped from claiming that the partnership is ultra vires.

5. **Contract Limitation—Commencement of Suit—Amendment—New Cause of Action.**—The contract of shipment stipulated that in case of loss, in order to make appellant liable therefor, suit should be instituted within forty days after such loss occurred. Within forty days after the damage occurred appellee's petition was filed, and the clerk was instructed to issue thereon. More than forty days after the damage occurred citation was issued, and appellee filed an amended petition setting up a copartnership between appellant and its connecting lines, which had not been alleged in the original petition. *Held,* the amendment did not set up a new cause of action, but only amplified the grounds upon which appellant was liable; and the suit is treated as having been commenced at the time the original petition was filed.

APPEAL from County Court of Johnson. Tried below before Hon. F. E. ADAMS.

*J. W. Terry,* for appellant.—1. Although a number of carriers whose lines comprise the route of shipment constitute a copartnership in receiving such a shipment, the first carrier has the legal right to stipulate that it shall not be liable for any damages occurring beyond the last station on its own road, and shall not be liable for any damages occurring on the line of its copartners.

2. It not being in plaintiff's petition that there was any legal authority existing authorizing the appellant to enter into a copartnership with other carriers, the petition fails to allege a legal partnership, and

the partnership alleged was ultra vires.    Railway v. Morris, 67 Texas, 692.

3.  It appearing that the form of contract which the plaintiff testified to, provided that no suit should be maintained unless instituted within forty days after the damage occurred, and it appearing that the suit against the copartnership or against the defendant as a member of any copartnership contained in the second count of plaintiff's first amended original petition was not instituted until more than six months after the damage occurred, the court having correctly determined that the plaintiff could not recover on any other count in the petition, should have charged the jury to find for the defendant, as requested, because such second count of the petition was barred by forty days' limitation.    Erskine v. Wilson, 20 Texas, 77; Id., 27 Texas, 117; Haddock v. Crocheran, 32 Texas, 276; Ayres v. Cayce, 10 Texas, 99, 106; Williams v. Randon, 10 Texas, 74; Kinney v. Lee, 10 Texas, 155; Bigham v. Talbot, 63 Texas, 271; Railway v. McGown, 8 S. W. Rep., 57.

*Poindexter & Padelford,* for appellee.—1.  When a partnership is alleged in a pleading, the party alleging same is not required to prove its existence, and the opposite party can not deny its existence unless such opposite party has specially pleaded such denial under oath. 1 Sayles' Civ. Stats., art. 1265, secs. 6, 8; Railway v. Tisdale, 74 Texas, 8; Railway v. Allison, 59 Texas, 193.

2.  The defendant and said connecting lines being partners under the undenied allegations of plaintiff's petition, the whole line was in contemplation of the law the line of defendant and its copartners, one portion as much as the other.    Each partner is responsible for the acts of their copartners, and especially for negligence of copartners.  1 Bates on Part., sec. 437; Moreton v. Harden, 6 Dow. & R., 275 (4 Barn. & C., 223); Roberts v. Johnson, 58 N. Y., 613; McMahon v. Davidson, 12 Minn., 358.

3.  A party can not by contract relieve or exempt himself from liability for damages caused by its own negligence or that of its agents or partners.    Railway v. Rosenbaugh, 5 Am. St. Rep., 726, and authorities cited in note.

4.  If two or more corporations consolidate or form a copartnership and afterwards enter into a contract as a consolidated company, or jointly as partners, they nor either of them can set up the fact that they had no legal right to effect a consolidation or enter into a copartnership, as defense to an action brought upon such contract, after it has been performed by the plaintiff.    A corporation, after it has received the benefits of a contract executed on the part of the plaintiff, when sued for a breach of that contract on its part, is estopped from pleading ultra vires, and more especially is this the case when the contract claimed to be ultra vires is in its nature collateral to the contract

sued on. Bond v. Terrell Mfg. Co., 82 Texas, 309; 2 Mora. on Corp., sec. 697; Bissell v. Railway, 22 N. Y., 258–263; Bank v. Gray, 14 Barb., 471; Railway v. Railway, 48 N. J. L., 559, et seq.; Bank v. Mathews, 98 U. S., 622; Bank v. Porter, 125 Mass., 333–335.

5. The amendment sets up no new cause of action. It is on the same contract between same parties for same damages, arising from same injuries to same steers, caused by same negligence. Ross v. Kornrump, 64 Texas, 391. Roberson v. McIlhenny & Co., 59 Texas, 617; Elevator Co. v. Mitchell, 78 Texas, 66; Railway v. Irvine, 64 Texas, 533; Lee v. Boutwell, 44 Texas, 152; Beeton v. Alexander, 27 Texas, 667; Thouvenin v. Lea, 26 Texas, 612.

RAINEY, ASSOCIATE JUSTICE.—*Conclusions of Fact.*—January 18, 1890, appellee delivered to the agent of appellant, at Cleburne, Texas, ninety-four head of cattle to be transported to Chicago, Ill., which were delivered in Chicago on January 23, 1890. On account of the failure of appellant's agents to allow the cattle to be fed and watered for the space of forty-nine hours, the value of said cattle depreciated to the extent of the amount found by the verdict of the jury. The damage occurred on January 22, 1890, after the cattle had been taken in charge by a connecting line of railway, which carrier was a partner of appellant in the transportation of freight, and appellant and its connecting lines were under the same control and management.

Appellee made a contract with appellant for a through shipment from Cleburne to Chicago. The cattle were carried through in the same cars, and for the price fixed by appellant, and all charges and expenses were collected by an agent in Chicago.

The contract was on printed blanks, filled out, and among others, contained the following clauses:

"This agreement, made between the Gulf, Colorado & Santa Fe Railway Company, of the first part, and A. N. Wilbanks, of the second part, witnesseth: That whereas, the Gulf, Colorado & Santa Fe Railway Company, as aforesaid, transports the live stock covered by this agreement, at the reduced rates named herein, only as per above rules and regulations. Now, in consideration that the said party of the first part will transport for the party of the second part three carloads of cattle from Cleburne to —— station, delivering it at the last named station to its connecting lines for transportation to Chicago, at the rate of 51¼ per 100 lbs. from Cleburne to Chicago. * * *

"It is furthermore hereby and herein expressly provided and mutually agreed, that no suit or action against this company for recovery of any claim by virtue of this contract shall be sustained in any court of law or chancery unless such suit or action shall be commenced within forty days next after the damage shall occur, and should any suit or action be commenced against this company after the expiration of the

aforesaid forty days, the lapse of time shall be taken and deemed conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding.  *  *  *

"And it is further stipulated and agreed between the parties hereto, that in case the live stock mentioned herein is to be transported over the line or lines of any other railroad or steamboat company, the said party of the first part shall be released from liability of every kind after said live stock shall have left its road; and the party of the second part hereby so expressly stipulates and agrees, the understanding of both parties hereto being that the party of the first part shall not be held or deemed liable for anything beyond the line of the Gulf, Colorado & Santa Fe Railway, excepting to protect the through rate of freight named herein."

On March 1, 1890, plaintiff filed his original petition herein against defendant for damages for ninety-four head of cattle shipped from Cleburne, Texas, to Chicago, Ill., on January 18, 1890; alleging, that by reason of said cattle not being watered for a period of forty-nine hours some of them died and others were greatly injured and damaged.   The damage is alleged to have accrued on January 22, 1890.

On September 15, 1890, defendant filed its amended answer herein— answered to plaintiff's original petition and demurred to plaintiff's petition, etc., same also containing three special pleas:

1. That under the contract of shipment defendant limited its liability to its line from Cleburne, Texas, to Purcell, I. T., and that said cattle were delivered to connecting carriers in good condition, etc.

2. That plaintiff failed to give notice in writing to nearest station agent of defendant of said damages, as required by contract.

3. Defendant used the following language, viz: "And defendant further avers, that it appears from the indorsement on the petition of this cause that this suit was filed on the 1st day of March, 1890, but that citation did not issue in said case until the 4th day of June, 1890," wherefore defendant says that more than forty days had elapsed after the loss or damage, if any, accrued to plaintiff's cattle and the commencement of this suit and the serving of citation in this cause, etc.

On September 15, 1890, plaintiff filed his first amended petition setting up two counts:  1. That defendant, on the 18th day of January, 1890, entered into a contract with plaintiff whereby it, for a valuable consideration, contracted and agreed to securely carry ninety-four head of plaintiff's beef cattle from Cleburne, Texas, to Chicago, Ill.; that defendant failed to carry out this contract, and by its negligence failed to feed and water said cattle, or allow the same to be fed and watered, for the period of forty-nine hours, and by reason thereof some of said cattle died and others were injured.  2. That defendant and the different connecting lines of railway from Cleburne, Texas, to Chicago, Ill., on and before January 18, 1890, had formed a copartnership

to carry passengers and freight from Cleburne, Texas, to Chicago, Ill., and that the defendant, as a member of said copartnership, contracted with plaintiff for a valuable consideration to safely carry said cattle from Cleburne, Texas, to Chicago, Ill., etc., which said copartnership failed to do, etc.; alleging failure and negligence as above, and laying damages at $954.

The defendant filed no answer or reply to this first amended petition of plaintiff. No plea of any kind was filed by defendant denying this copartnership.

On March 31, 1892, plaintiff filed his first supplemental petition in reply to defendant's first amended answer, which included a general denial, and also the following: And further, plaintiff says that he filed this suit within the proper time. That on the 1st day of March, 1890, he handed to the clerk of this court his original petition on file herein, with instructions to the clerk to file and issue on same; that if citation was not issued on same immediately, the failure was not caused by his neglect or instructions on his part, and that he is not in any way responsible for such nonissuance, etc., and he further says, that said clause in said contract is unreasonable and void.

On April 1, 1892, this cause was tried by a jury, who, under instructions of the court and the evidence, returned a verdict for plaintiff for $809.76, and interest from January 23, 1890, at 6 per cent per annum, upon which the court rendered judgment.

*Conclusions of Law.*—When a partnership is alleged in a pleading, it is not necessary on the trial to offer evidence in support thereof, unless the opposite party by proper plea denies the same under oath. The plaintiff in this cause alleged, "that there is a continuous line of railroad from the city of Cleburne, Texas, via Fort Worth, Texas, via Purcell, I. T., to the city of Chicago, State of Illinois, and that the whole of said line is under one and the same management and control, for the purpose of managing and conducting the business of a public common carrier from said city of Cleburne, Texas, to Chicago, Ill., and that the whole of said line and management forms and composes a copartnership for the purpose of conducting and carrying on said business of common carrier." Defendant failed to deny the copartnership by plea under oath, or otherwise.

The court in its charge assumed the existence of a copartnership between appellant and its connecting lines, of which appellant complains. Appellant having failed to deny the partnership under oath, the action of the court in this particular was proper. Rev. Stats., art. 1265; Railway v. Tisdale, 74 Texas, 8.

The court also charged the jury, in effect, that as a partnership existed, appellant could not by a stipulation in the contract restrict its liability for damages to its own line. Appellant complains of this,

and contends that "although a number of carriers whose lines comprise the route of shipment constitute a copartnership in receiving such a shipment, the first carrier has the legal right to stipulate that it shall not be liable for any damages occurring beyond the last station on its own road, and shall not be liable for any damages occurring on the line of its copartners." Appellant pleaded that its liability was restricted to its own line.

The contract was in writing, and it was charged by appellee that it was in appellant's possession, and due notice was given for its production, which was not done. Plaintiff testified, that the contract as made was for a through shipment by appellant. The blank contract which contains the stipulations to which he says he thinks he signed (and it is not shown that he signed any other) provided, that the cattle were to be transported "from Cleburne to —— station, delivering it at the last named station to its connecting lines for transportation to Chicago." From this it will be seen, that the point at which a delivery to connecting lines was to be made, and at which appellant's liability was to cease, is not mentioned.

If the testimony of appellee be true, it seems more than probable that this blank was left unfilled intentionally, as the stipulation restricted liability to its own line, was not intended to be relied on, and, in support of the judgment, we might properly hold that such stipulation was not made.

But conceding that in the contract signed by appellee there was a stipulation, that in case the live stock mentioned therein was to be transported over the line or lines of any other railroad, appellant should not be held liable for anything beyond its own line, except to protect the through rate of freight, appellant would still be liable for damages occurring by the negligence of its associates. Under the allegations of the petition, appellant and associates, or connecting lines, were under one management, and were associated for the purpose of conducting and carrying on business as common carriers from Cleburne, Texas—the initial point of shipment—to Chicago, Ill., the terminal point of shipment. Such an arrangement made appellant and its associates practically one line, and each liable for the miscarriage or default of the other respecting through shipments of freight over said lines. This proposition is discussed in Railway v. Tisdale, 74 Texas, 8, and in Railway v. Anderson, 3 Texas Civil Appeals, 9, and we think settled contrary to the contention of appellant herein.

The right of common carriers to contract in relation to the carriage of freight and passengers has been much discussed. In Hutchinson on Carriers, page 117, where the carriage of goods was under discussion, it is said: "It is universally conceded that he may bind himself by an express contract to carry to any distance or to any destination, whether the carriage can be accomplished by his own means of con-

veyance upon his own route, or will require the employment of agents or subsidiary carriers beyond it. In this respect he may bind himself to the same extent as other contracting parties, even to the performance of impossibilities, if he will."

Henry, Justice, in Harris v. Howe, 74 Texas, 534, says: "The obligation to convey passengers over its own line not only exists as a public duty independently of any contract to do so, but from considerations of public policy it can not even be modified by contract so as to exempt the carrier from the duty to protect the passenger from consequences of the negligence of its agents and servants. Railway v. McGown, 65 Texas, 640.

"Beyond its own line, a different rule in some respects prevails. It is only because the carrier has voluntarily contracted to do so that it can be required to transport a passenger over any other than its own line, and it results that, like other contracting parties, it may define the terms and limit the extent of its undertaking over other lines, inasmuch as may be required to leave upon them the responsibilities of their own negligence."

The same rule applies to such contracts, whether for the transportation of passengers or freight.

Ever since the decision of the case of Harris v. Howe, supra, our Supreme Court has uniformly held that a carrier had a right to restrict by contract its liability to its own line. Railway v. Baird, 75 Texas, 256; Hunter v. Railway, 76 Texas, 195; Railway v. Williams, 77 Texas, 121; Miller & Co. v. Railway, 83 Texas, 519; Smith v. Tel. Co., 84 Texas, 362; McCarn v. Railway, 84 Texas, 352.

In none of these cases, however, was there shown to be a copartnership existing between connecting lines, nor any association existing between them other than that a through bill of lading or ticket was given by the initial carrier, transportation under it by the connecting carrier, and the collection of the whole freight (when freight was the shipment) by the terminal line. In the majority of these cases the court seems to recognize that had a copartnership existed between independent and connecting lines, each would have been responsible for the negligence of the other.

In the case of Railway v. Baird, supra, Stayton, Chief Justice, in an elaborate and able opinion, says: "In the absence of partnership or authority to make a joint contract binding on all carriers over whose lines freight is to pass, connecting lines are but the agencies employed by the contracting carrier to perform its own contract. That a contract for through transportation over the connecting lines of several railway companies, as between themselves composing a partnership, or holding themselves out as such, is binding on all, and one responsible for the acts of another, results from the fact that the contracting company has power to so bind all."

In Smith v. Telegraph Company, 84 Texas, 362, Marr, J., says: "Each carrier should be held liable for its own acts of negligence, and *even for the acts of the others if there is a partnership* between all, or a joint contract binding upon each of them."

In McCarn v. Railway, 84 Texas, 352, Stayton, C. J., in reviewing the position of the Court of Appeals on this question which conflicts with the decision of the Supreme Court, says:  "It seems to us a mistake to assume that the initial carrier, throughout an entire route formed by two or more independent but connecting lines, becomes a common carrier, when neither the rules of law nor the contract of the parties creates that relation, and upon this false assumption to base the proposition that it can not exempt itself from liability for the negligence of a connecting carrier, because the latter is the agent or servant of the former.  If the relation be conceded, the proposition based on it would be a sequence; but that failing, the conclusion drawn from it fails."

As before stated, in all the foregoing cases there was no partnership shown, and the sole question was, could a carrier making a through shipment contract against liability for the negligence of independent and connecting lines?  As there was no proof showing a partnership existing between connecting lines, or that they constituted an association under one management, a different state of case existed from the one at bar.

Then the question arises, did the association of the lines under one management, as alleged, constitute such lines a common carrier from the initial to the terminal point of shipment?  We think so.  Each line by virtue of such an association had surrendered its independence and become a part of the other.  Each was the agent of the other, and in contemplation of law, the negligence of one was the negligence of the other, and binding on all.  When carriers act in reference to the transportation of freight independently of *other* carriers, forming no partnerships or associations, there is no question as to the rule in this State but that they can restrict liability to their own lines; but when they form associations of the character as the case at bar, they become common carriers for the whole line, and any attempt to restrict liability for negligence contravenes the spirit of the law, and will not be permitted.  This position we think ·is fully sustained by the case of Railway v. Tisdale, supra, and that it is correct is fairly deducible from the opinion from which we have quoted above.  Railway v. Wilson, 26 S. W. Rep., 131.

Appellant's counsel insist, "that it not being alleged in plaintiff's petition that there was any legal authority existing authorizing the appellant to enter into a copartnership with other carriers, the petition fails to allege a legal partnership, and the partnership alleged was ultra vires."

There was no exception made in the court below to the manner in which the partnership was alleged, and it is too late to urge it now, as the allegation is sufficient in the absence of a special exception. As to the partnership being ultra vires, we deem it only necessary to say that appellant is in no position to raise such an issue. Having made the contract in that capacity, it is estopped from denying it. Harris v. Howe, supra.

The contract for shipment stipulated that in case of loss, in order to make appellant liable therefor, suit should be instituted within forty days after such loss occurred. It is contended that the suit was not filed in time, and for that reason the court should have instructed the jury to find for appellant.

The evidence shows that the cattle were damaged on January 22, 1890, and suit was instituted against appellant on March 1, 1890, and citation issued on June 4th, following. When the petition was filed instructions were given to the clerk to issue thereon. No allegation was contained in the petition of the existence of a copartnership. On September 15th, following, plaintiff amended, and at that time set up a copartnership between appellant and connecting lines. The point is made that the amendment set up a new cause of action, and no suit was brought against appellant in the capacity in which a recovery was had until the amendment was filed. In this we can not concur. The action was brought against the appellant in the first instance for the same injury as pleaded in the amendment. The contract was made with appellant, as the amended petition only amplified the grounds upon which appellant was liable. The existence of a copartnership only affected appellant's rights to restrict its liability to its own line, and did not relieve it from liability to respond in damages in a suit against it alone.

Counsel for appellant insists, that the stipulation in the contract also required citation to be served within forty days after the loss occurred. We find, however, that no such stipulation was made, and we are not called upon to pass upon the validity of such a stipulation.

This settles all the material points raised that we think it necessary to discuss. We find no error in the charge of the court. The evidence is sufficient to support the judgment, and it is affirmed.

*Affirmed.*

Delivered May 23, 1894.