GULF, COLORADO & SANTA FE RAILWAY COMPANY v. W. C. BAIRD.

· No. 2850.

**Freight Contract for Cattle.**—Cattle were shipped at Decatur, Alabama, for Fort Worth, Texas, upon a contract made by the Louisville & Nashville Railway Company for itself and connecting lines. Among other stipulations was the following: "It is. further distinctly understood by the parties hereto that all liability of the said Louisville & Nashville Railway Company as carriers shall cease at New Orleans when ready to be delivered to the owner, consignee, or carrier whose line may constitute a part of the route to destination." The cattle reached New Orleans in good condition. At New Orleans and at Houston they appear to have had but little care, and in poor condition they passed into the control of the appellant at Rosenberg Station. They were conveyed to the destination with due care. Suit was brought against appellant, and judgment obtained. *Held:*

1.   The Louisville & Nashville Railway Company had the right to limit by contract their liability, so that it should not as common carrier extend beyond their lines.

2.   A common carrier is under no obligation to contract beyond its lines. As its obligations beyond are by contract, the terms of contract may be determined by the parties.

3.   In the absence of limitations in the contract a railway company making a contract for through carriage would be liable for injury occurring at any point upon any connecting line.

4.   In the absence of partnership or authority to make a joint contract binding upon all carriers over whose lines freight is to pass, connecting lines are but the agencies employed by the contracting carrier to perform its own contract.

5.   A contract made without authority might have been ratified by the connecting-

lines, but a ratification will not be presumed from the performance of some of the services contemplated by it when it is not at liberty to refuse to render the services.

6.  The laws of Texas prescribing the duties of connecting railways provide that "every such company shall for a reasonable compensation draw over their railroad, without delay, the passengers, merchandise, and cars of every other railway company which may enter and connect with their railroad." In face of this legislation more would be required to fix the liability of the other railways than that a through shipment was made under the contract, that a price was fixed for the entire transportation, and that it was collected at the place of destination by the railway company delivering the cattle.

7.  The clause in the contract limiting the liability beyond its line repudiates the alleged partnership with the other connecting lines.

8.  See other facts held insufficient evidence of joint liability.

9.  The defendant was only liable for injury to the cattle while in its possession.

APPEAL from Tarrant.   Tried below before Hon. R. E. Beckham. The opinion states the case.

*Leake, Shepard & Miller* and *J. W. Terry,* for appellant. — 1.   The last carrier is not liable for the negligence of its connecting line in the absence of proof of partnership between them.   Railway v. Ryan, 2 Texas Ct. App. C. C., secs. 430, 431; Ins. Co. v. Railway, 104 U. S., 146; Laws. Con. Carr., p. 361 and notes; Railway v. Trippe, 42 Ark., 465; Railway v. Roach, 35 Kans., 740; Wells v. Thomas, 72 Am. Dec., 238, 239; Darling v. Railway, 11 Allen, 295.

2.   It was the duty of the court to define the rules of law applicable to the evidence given to the jury.   Willis v. McNeill, 57 Texas, 465; Wootters v. Kaufman, 67 Texas, 488; Cook v. Dennis, 61 Texas, 246.

3.   The mere fact of co-operation between carriers to the extent of receiving freight from each other and dividing the same in proportion to service rendered, etc., does not constitute partnership.   Ins. Co. v. Railway, 104 U. S., 146; Railway v. Trippe, 42 Ark., 465; Darling v. Railway, 11 Allen, 295; Express Co. v. Hess, 53 Ala., 19; Wells v. Thomas, 72 Am. Dec., pp. 238, 239.

4.   The limit of liability to its own line by the contracting carrier is valid at common law generally, and in the State of Alabama where the contract was made.   Railway v. Copeland, 63 Ala., 210; Railway v. Culver, 75 Ala., 578; Railway v. Meyer, 78 Ala., 597; Railway v. Thomas, 83 Ala., 343; Myrick v. Railway, 107 U. S., 102; Harris v. Railway, 26 Am. and Eng. Ry. Cases, 323; Trust Co. v. Railway, 31 Am. and Eng. Ry. Cases, 104; McKonnel v. Railway, 9 S. E. Rep., 1006; Wells v. Thomas, 72 Am. Dec., 231.

5.   The limitation in the contract made by the Louisville & Nashville Railway Company of liability to its own line enured to each of its connecting lines, and confined the liability of each thereof to its own line. Hutch. on Carr., secs. 271–74; Laws. Con. of Carr., secs. 243, 244; Express Co. v. Hess, 53 Ala., 19; Railway v. Thomas, 83 Ala., 343.

6.   The contract must be interpreted by the law of the place where made.   Cantu v. Bennett, 39 Texas, 303; Ryan v. Railway, 65 Texas, 14, 15; Liverpool Steam Co. v. Phœnix Ins. Co., 129 U. S., 397; Laws. Con. of Carr., sec. 111; Whart. Confl. of Laws, secs. 471–73; Story's Confl. of Laws, sec. 286c; Rorer Interstate Laws, pp. 51, 71; Pennsylvania Co. v. Fairchild, 69 Ill., 260; Hale v. Nav. Co., 15 Conn., 539; McDaniel v. Railway, 24 Ia., 412; Talbot v. Merchants Dispatch Co., 41 Ia., 207; Carpenter v. Railway, 72 Me., 388; Arroya v. Currell, 1 La. Ann., 528; Malpica v. McKowan, 1 La. Ann., 248; Lynch v. Postlethwait, 7 Mart., 69; Chase v. Ins. Co., 91 Mass., 311; Railway v. Byrd, 91 Ill., 268; Brown v. Am. Finance Co., 31 Fed. Rep., 516.

7.   The contract was made in Alabama, and in the absence of proof of the law of that State the court must presume that the common law prevails there, and not the statute law of Texas.   Carpenter v. Railway, 72 Me., 388; Miles v. Collins, 1 Metc., 308; Forbes v. Scannel, 13 Cal., 243; Houtaling v. Ball, 19 Mo., 84; Ellis v. Maxon, 19 Mich., 186; Throop v. Hatch, 3 Abb. Prac., 21; Dunn v. Adams, 1 Ala., 527; Crouch v. Hall, 15 Ill., 265; Brown v. Railway, 83 Pa. St., 316; People v. Brady, 56 N. Y., 182; Railway v. Weaver, 28 Am. and Eng. Ry. Cases., 341.

*Ball & McCart,* for appellee. — 1.   It was only necessary to prove that the lines in question had united, either between themselves or in conjunction with others, to complete a line of transportation, and received goods for freight and gave through bills of lading.   Railway v. Allison, 59 Texas, 193; Railway v. Fort, 9 Am. and Eng. Ry. Cases, 39; W. & W. Ct. App. C. C., sec. 1252; Railway v. Furguson, 9 Am. and Eng. Ry. Cases, 395; W. & W. Ct. App. C. C., sec. 1233; Railway v. Slater, 3 Wills. Ct. App. C. C., sec. 7; Railway v. Creath, 3 Wills. Ct. App. C. C., sec. 84; Railway v. Golding, 23 Am. and Eng. Ry. Cases, 732; S. C., 3 Wills. Ct. App. C. C., secs. 33, 34; 13 Fed. Rep., 37; Harp v. Grand Era, 1 Wood Co. Ct., 184; Laws. on Carr., 343; Hutch. on Carr., 123; Bradford v. Railway, 62 Am. Dec., 411; Hart. v. Railway, 59 Am. Dec., 450.

2.   Defendant did not adduce any testimony from the Louisville & Nashville Railway on the question as to how they were enabled to give a through rate.   Hays v. Street Ry. Co., 70 Texas, 602; Johnson v. Brown, 51 Texas, 65; Freiberg, Klein & Co. v. B. H. & S. I. Co., 63 Texas, 449; Lee v. Yandell, 69 Texas, 34.

3.   The provision of the special contract offered in evidence whereby the liability of the Louisville & Nashville Railway agreed to cease and be determined at New Orleans was a provision solely for the benefit of the said Louisville & Nashville Railway, and on the face of the contract did not enure to the benefit of the other connecting carriers.   McMillan v. Railway, 16 Mich., 79; S. C., 93 Am. Dec., 208.

4.   The said special contract was unreasonable, and was a nullity at

common law, as well as under the statute.    Railway v. Creath, 3 Wills. Ct. App. C. C., sec. 84; Railway v. Golding, 3 Wills. Ct. App. C. C. sec., 34.

5.    A contract made in Alabama which is to be performed in Texas, and which is contrary to the statutes of Texas, will be treated as a nullity by the courts of Texas when its provisions are invoked or sought to be invoked in Texas.    Railway v. Golding, 3 Wills. Ct. App. C. C., sec. 34.

STAYTON, CHIEF JUSTICE.—On February 27, 1883, appellee delivered to the Louisville & Nashville Railway Company, at Decatur, Alabama, several car loads of cattle for transportation to Fort Worth, Texas.

At the time the cattle were shipped a written contract was made, the first part of which was as follows:

" *Live Stock Contract.*

"DECATUR (ALA.), STATION, February 27, 1883.

"Agreement made between the Louisville & Nashville Railroad Company and its connecting lines of the first part and W. C. Baird of the second part, witnesseth:    That whereas the said Louisville & Nashville Railroad Company and its connecting lines, as common carriers, transport live stock only as per above tariff, now, in consideration that the said party of the first part will transport for the said party of the second part one car load of cattle (—— head, more or less) from Decatur to Fort Worth (Texas) Station, at the rate of one hundred and sixty-five dollars per car load, and a free passage to the owner or his agent on the train with the stock (if shipped in car load quantities), the same being a special rate, lower than the regular rate mentioned in the said tariff, the said party of the second part thereby relieves said party of the first part from the liability of a common carrier in the transportation of said stock, and agrees that such liability shall be only that of a private carrier for hire; and it is further distinctly understood by the parties hereto that all liability of the said Louisville & Nashville Railroad Company as carriers shall cease at New Orleans, when ready to be delivered to the owner, consignee, or carrier whose line may constitute a part of the route to destination."

The shipping contract contains many other provisions, but unnecessary to refer to, and is signed by J. W. Golden, "agent of the company," and by appellee.

No tariff of charges referred to is found in the record.

The substance of appellee's petition is thus correctly stated in brief of his counsel:

"Plaintiff's petition contains two counts.    In the first count he alleges, in substance:

"That on the 27th day of February, 1883, the defendant, being a common carrier of live stock, had been and was at that time doing business with other railway companies or connecting lines, and more especi-

ally with the Louisville & Nashville Railroad Company, the Galveston, Harrisburg & San Antonio Railroad Company, the Texas & New Orleans Railroad Company, the Louisiana Western & Morgan Railroad Company, and the Louisiana & Texas Railroad Company.

"That defendant was at said date associated with said other companies and lines of railroads for the purpose of carrying live stock and other freight from Decatur, Alabama, to Fort Worth, Texas, and that these different railroads formed a continuous line for the transportation of freight between said points, over which they each and all gave through bills of lading and contracted with shippers for through rates, which contracts and bills of lading were mutually honored, respected, and carried out by said railroad companies, they apportioning the receipts among themselves.

"That on said date plaintiff delivered to defendant, and defendant, by and through the said Louisville & Nashville Railroad, as its agents, received at said Decatur the cattle in controversy, to be carried to Fort Worth.

"That said defendant and its said connecting lines, in violation of their duty as common carriers, and contriving and intending to injure him, etc., acted so negligently in the carriage of said cattle that they were delayed, mistreated, and starved to the extent of causing the death of a great number and injuring the remainder, to his damage $4190.

"The second count restates the same cause of action, but alleges in detail that defendant's line of road proper extended from Rosenberg Junction to Fort Worth, and proceeds to give the points at which the different lines of railroads connected with each other, forming a line from Decatur to Fort Worth.

"It then alleges that the cattle were delivered to the Louisville & Nashville Railway at Decatur, to be transported from there to New Orleans, and from thence to Fort Worth; and that the said Louisville & Nashville Railway agreed and undertook to carry the same to Fort Worth for the price of $150 per car load. That said Louisville & Nashville Railway did not furnish plaintiff with a bill of lading for his cattle, but after they had been loaded on the cars presented to him a printed contract and required him to sign the same before the cattle were shipped out, and that he was forced in order to get his cattle shipped to sign same. That by the terms of said contract the liability of said Louisville & Nashville Railway was to cease at New Orleans, but that there was no provision in said contract affecting the liability of any of the other lines of railroad which might carry the cattle to Fort Worth.

"That said cattle were thereupon carried by said Louisville & Nashville Railway to New Orleans, where they were delivered to the Louisiana & Texas Railway, which carried them to Vermillionville and delivered them to the Louisiana Western Railway, which carried them to Orange,

where they were delivered to the Texas & New Orleans Railway, which carried them to Houston, where they were delivered to the Galveston, Harrisburg & San Antonio Railway, which carried them to Rosenberg, where they were delivered to defendant railway, which carried them to Fort Worth.

"That at said place of Fort Worth defendant collected from plaintiff all the freight bills and feed bills and all other charges for the whole route.

"That the Morgan Road, which took his cattle at New Orleans, did not give him any bill of lading at all, nor did any of the roads between New Orleans and Fort Worth.

"That these last named roads, from New Orleans to Fort Worth, formed a continuous and connecting line from New Orleans to Fort Worth, each recognizing and carrying out the contracts of the other and making through rates over the other roads respectively, etc., and in substance that the damage all occurred between New Orleans and Rosenberg Junction."

Appellant alone was sued, and among other defenses it pleaded that neither the Louisville & Nashville Railway Company nor its agents at Decatur, Alabama, had any right to contract with plaintiff for transportation of his cattle over its road; denied that that company or its agents had made a contract to transport cattle over defendant's line, or that it by contract was bound so to do, but that it had been accustomed, in obedience to the statutes of this State, to receive cars from the Galveston, Harrisburg & San Antonio Railway Company when tendered to it, where connection with appellant's road was shown, and that if it received the cars loaded with cattle, as alleged, it received them at Rosenberg Junction in cars of that company, upon its demand that they should be transported to Fort Worth by appellant; and that if it received compensation for such services this was not through any copartnership or other contract made with any of the railway companies named in plaintiff's petition, but a fair and reasonable rate charged by it for services rendered in accordance with its statutory obligation to transport cars of other companies, and that it transported the cattle to Fort Worth and there delivered them to appellee without injury while in its possession.

In the next paragraph of the answer the defendant pleaded the contract to which we have referred, made it an exhibit, claimed the benefit of any of its provisions, and asserted that the express limitation to the effect that the Louisville & Nashville Railroad Company should not be bound beyond the terminus of its own line for the performance of the contract enured to the benefit of every carrier over whose line the cattle passed, and alleged if the cattle were injured while in transit this occurred while they were on the roads of other companies.

The proof showed that an agent of appellee in charge of the cattle was

given free transportation by the several roads over which the cattle passed, and that appellant returned him in the same manner from Fort Worth so far as its line extended.

The evidence shows that the cattle were carried to New Orleans without injury, and that en route to Fort Worth they passed over the several railways as alleged in the petition.

There was a great deal of evidence on behalf of plaintiff to show that the cattle received very severe treatment at New Orleans, and between New Orleans and Houston, and especially in the yards at Houston of the Texas & New Orleans Railway, and that a number of the cattle died, and the remainder arrived at Rosenberg and were delivered to defendant in very bad condition. There was no evidence to contradict these facts.

Plaintiff offered evidence to show that the cattle were badly treated at Belton, on the defendant's line, where they were stopped to be watered and fed, and defendant offered evidence tending to rebut the same. Otherwise, there was no delay or injury attempted to be proven on defendant's line. The evidence shows that most of the damage was done on the railway lines before delivery to defendant.

When the cattle reached Fort Worth plaintiff had to pay the agent of defendant the whole amount of the freight charges and feed from Decatur, Alabama, to Fort Worth. The agent of defendant collected the money and delivered the cattle to the plaintiff. The money was sent by the agent to the treasurer of the defendant at Galveston, whose business it was to settle with the other companies. The cattle came all the way from Decatur in the cars furnished at that point by the Louisville & Nashville Railway Company.

Oscar G. Murray, a witness for defendant, testified as follows: "During the year 1883, I resided at Galveston, Texas, and was general freight agent of the Gulf, Colorado & Santa Fe Railway Company. My duties and powers as general freight and passenger agent of the defendant were to fix the rates to be charged for freight and passengers over defendant's road, and to make such arrangement for interchange of traffic with connecting lines as from time to time became necessary or desirable. I had occupied this position with the defendant since August 1, 1880. It was my duty to make freight rates on the contracts of the character referred to above. Other agents employed by defendant under the direction of its traffic department were authorized from time to time to make rates for freight and passengers over the defendant's road, subject to my approval. To the best of my recollection the defendant had not during the year 1883, or at any previous time thereto, since August 1, 1880, any freight arrangement or partnership agreement with the Louisville & Nashville Railway Company. The defendant did not at any time delegate any authority to the Louisville & Nashville Railway Company, or to the agent of that company at Decatur, Alabama, to make contracts for the

shipment of plaintiff's cattle, or any other freight, over the Gulf, Colorado & Santa Fe.   The defendant from time to time announced the rates which it would accept upon shipments of cattle and other freight offered it for transportation by other railway companies connecting with it, which, together with the usual and customary rules regulating the receipts of freight in good order and the interchange of cars, was the only arrangement which existed during the year 1883 applying to traffic received at Rosenberg or Houston from connecting lines destined to Fort Worth.   The defendant was under no contract obligation to do this for the Louisville & Nashville Railway Company, but acted only under a duty imposed by the law of Texas upon all railroad companies to receive and transport the cars and freight offered by all connecting lines.   The defendant's facilities for shipping freight to the territory reached by its lines, and the rates as charged upon traffic received from connecting lines, were made known from time to time by furnishing such rates to the railway companies connecting immediately with the defendant's road and for their information and guidance."

The charge given by the court made the liability of appellant for injuries resulting from the failure of duty in connecting lines to depend on the existence of a partnership between them, but contained no clear statement of the law which, applied to the facts, would enable the jury to determine whether a partnership existed, though it may have contained a true statement of the law applicable to the liability of joint contractors not partners for failure of duty of one or more of them.

Charges were asked by appellant and refused by the court which would have enabled the jury correctly to determine whether a partnership existed, but the charge in which this was done may have been faulty in another respect.

The main question in the case arises on an assignment of error which questions the sufficiency of the evidence to sustain the verdict against appellant.   The contract evidently was one for the transportation of the cattle from Decatur, Alabama, to Fort Worth, Texas, and it bound the Louisville & Nashville Railway Company to do this, through its own and connecting lines, for the stipulated price.   It does not follow from this, however, that there was any joint obligation resting on each of the companies over whose lines the cattle might pass.

If the Louisville & Nashville Railway Company had not authority by virtue of the existence of a partnership between itself and the other lines over which the cattle were to pass, or by virtue of an agency conferred on it by the other companies empowering it to make a contract which would bind them jointly, then the contract was simply the contract of the company that made it, by which it was bound to transport the cattle on its own line as far as that extended, and beyond that to furnish transportation through other lines.

In the absence of stipulations to the contrary, the company making the contract for through carriage would be responsible for a loss or injury occurring on connecting lines, through facts that would fix liability on it for a loss occurring while the cattle were on its own line.

In other words, its liability would be that of a common carrier through the entire distance the cattle were to be transported under the contract.

The company making the contract, however, as was done in this case, might lawfully contract that its liability as a common carrier should terminate when the cattle were safely transported over its own line and delivered to the connecting carrier.

The reason for this is that a common carrier is under no obligation to contract for the carriage of goods beyond its own line, and when it assumes to impose an obligation on itself for the further transportation of freight, this must be done by contract, express or implied, in which it may stipulate that its liability as a common carrier shall cease with the safe delivery to the next carrier of the thing to be carried.

In the absence of partnership or authority to make a joint contract binding on all carriers over whose lines freight is to pass, connecting lines are but the agencies employed by the contracting carrier to perform its own contract.

That a contract for through transportation over the connecting lines of several railway companies, as between themselves composing a partnership, or holding themselves out as such, is binding on all, and one responsible for the act of another, results from the fact that the contracting company has power so to bind all.

It is upon the same ground, when no partnership exists, that several carriers may be jointly bound by a contract made by one in the exercise of an agency conferred on it by the others.

It perhaps but seldom if ever occurs that a partnership exists between several railway companies, and to us it is evident that the facts proved were not sufficient to show that any such relation existed between any two or more of the companies owning the lines of railway over which appellee's cattle were transported; and so, if we exclude the evidence offered by appellant from our consideration.

The evidence as clearly fails to show that appellant ever did any act from which appellee could have understood that any copartnership existed.

It is not contended that there is evidence tending to show that appellant had expressly empowered the Louisville & Nashville Railway Company to make a contract by which it would be jointly bound with that company or any other.

In the absence of proof of express authority facts may be shown which will be sufficient to authorize a jury to find that the power actually existed, but we do not find such evidence in the record before us.

The contract relied on does not in terms purport to be the contract of appellant, but does purport to be a contract between the company that made it and its connecting lines on the one part and the shipper on the other.

Not being named in the contract, appellant would have had no right whatever, when the cattle reached New Orleans, to have demanded that they should be sent over any road with which its own had any connection, unless such right was acquired through some prior arrangement with the company that executed the contract.

That company might have sent the cattle to their place of destination through any other connection than that selected, and no carrier over whose road they were sent would have had any ground for complaint against that company or appellee by reason of anything that appears in the contract.

It might be true, however, if the shipping contract was in fact made for the benefit of appellant, but without prior authority, that it might make it its own by ratification, and with the other lines thus become bound; but ratification can not be presumed against appellant from the fact that it received the cars from another railway company, hauled them to their destination, and then collected the entire sum due for transportation.

A railway company can not be held to have ratified a contract from the fact that it performed some of the service contemplated by it, when it is not at liberty, contract or no contract, to refuse to render the service.

At the time the cars, in which appellee's cattle were, were received by appellant the law provided that "every such company shall for a reasonable compensation draw over their railroad without delay the passengers, merchandise, and cars of every other railroad company which may enter and connect with their railroad;" and it provided in case of disagreement as to compensation how this should be adjusted.    Rev. Stats., art. 4251.

Article 4253, Revised Statutes, provided penalty for failure to comply with the provisions of article 4251; and article 4255 further provided a mode by which railway companies could be compelled to render for other companies the services contemplated by article 4251.    The regulation of these matters and others intimately connected with them has been extended by subsequent legislation.    Act April 2, 1887, Gen. Laws, p. 110.

In the face of such legislation the evidence should show something more than that a through shipment was made, which would require the freight to pass over several lines of railway to its destination, that a price was fixed for the entire transportation and collected by the last carrier, before it ought to be held that there was a joint contract for transportation that would render each carrier liable for failure of duty on the part of other carriers in the connected lines.

So far as the evidence shows appellant may have collected and retained

a sum sufficient to cover its local rates from Rosenberg to Fort Worth, although the entire sum would not have given the same compensation per mile to each of the connecting carriers; but if it only retained out of the gross sum received a sum in proportion to the number of miles it hauled the cars, this would not affect the question, unless it was done in pursuance of a prior contract voluntarily made.

The manner in which the entire sum paid for the carriage of the cattle was collected was doubtless that usual and most convenient to all parties interested, and it very fully appears that appellee was not prepared when the cattle reached their destination at once to pay the freight due on them.

No inference can be drawn from the facts proved that appellant collected the entire freight because entitled to do so as a joint contractor, rather than in part in its own right and as to the balance as agent for the other carriers who had assisted in the transportation.

The law compelled appellant to furnish feed for the cattle, and that it did so and collected sum due therefor, together with such sum as other carriers had so expended, does not tend to show that a partnership existed between any of them, nor that they were joint contractors, and therefore the one liable for the failure of duty on the part of another. Nor does the fact that transportation may have been given by each company over its line to a person who accompanied the cattle on his way to and return from place of destination tend to show a partnership or joint contract.

The part of the contract which limited the liability of the Louisville & Nashville Railway Company as a common carrier to its own line, which it might lawfully do, is inconsistent with a holding that the contract was one made by a member of a partnership or a joint contractor; and if there was no joint liability when the written contract was made, when did it come into existence and who does it bind?

According to appellee's theory of the case every carrier over whose line the cattle passed is liable for an injury received by them while on any one of the lines, but the contract declares that this is not true as to the only carrier who was bound by the contract, either for through or partial transportation.

Giving due weight to every fact proved by appellee, we deem them insufficient to fix liability on appellant for any injury to the cattle occurring while they were in the hands of other carriers; and the evidence offered by appellant, uncontradicted by inferences fairly deducible from facts proved or by the direct evidence of any witness, is such as to clearly show that the Louisville & Nashville Railway Company had no power to bind appellant by the contract made.

Appellant is liable as a common carrier to appellee for any injury to his cattle while in its possession, unless relieved therefrom by the rules

applicable to the transportation of that kind of property, but this is the extent of its liability under the facts proved.

The court below should have granted a new trial, and for its refusal to do so its judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 26, 1889.