# FOURTH DISTRICT, 1901.

---

San Antonio & Aransas Pass Railway Company v.
R. L. Barnett.

Decided December 2, 1901.

1.—Jurisdiction—Amount—Interest—Amendment.

Where the amount claimed as damages in plaintiff's original petition, with interest thereon at 6 per cent from date of filing, did not exceed the court's jurisdiction at the time of such filing, an amended petition, claiming the same amount, with interest from the same date, filed at a time when the accrued interest had raised the damages above the jurisdictional amount, was improper, but did not necessarily defeat the court's jurisdiction over the proper amount; and it is suggested that upon another trial the plaintiff may amend his petition in this respect.

2.—Contract for Live Stock Shipment—Prior Verbal Agreement.

In the absence of any evidence of fraud, compulsion, or want of time to read the written contracts for the shipment of the live stock, they must be taken as merging all previous understandings between the parties. See evidence held to show that the contracts sued on were duly executed by plaintiff's direction in order to secure transportation for his helpers.

**3.—Same.**

Where plaintiff pleaded the written contract of shipment as well as the alleged verbal one, he was entitled to recover any damages that occurred on defendant's own line.

**4.—Same—Waybill—Agent's Report.**

The fact that a waybill issued by the defendant for the guidance of its employes was denominated a "through live stock waybill" to a point on the connecting line, via the point on defendant's line specified in the written contract, did not change or affect the terms of such written contract, nor could the shipping report signed by plaintiff and the agent at the connecting line at the connecting point have such effect.

**5.—Same—Evidence—Value at Destination.**

A witness acquainted with live stock and their values generally and who saw the cattle at the point of destination may testify to their value and condition there, and the condition they would have been in if properly transported, although he did not see the cattle when shipped or en route.

Appeal from the Couny Court of Karnes. Tried below before Hon. A. J. Parker.

*Proctors,* for appellant.

*Atkinson & Abernethy* and *A. J. Bell,* for appellee.

JAMES, CHIEF JUSTICE.—Appellee sued in the County Court for damages by reason of the failure of appellant and the Gulf, Colorado & Santa Fe Railway Company to properly and safely transport a shipment of eight carloads of cattle from Karnes City, Texas, to San Angelo, Texas.

Plaintiff's first amended original petition, upon which the case went to trial, alleged substantially as follows: That on August 26, 1898, plaintiff delivered 408 head of cattle to defendant, San Antonio & Aransas Pass Railway Company, at Karnes City for transportation to San Angelo, and that its agent there contracted with plaintiff to receive and ship and transport same over its line to Cameron and over the Gulf, Colorado & Santa Fe Railway Company lines from Cameron to San Angelo with reasonable care, speed, and diligence at a certain rate, to plaintiff as consignee. That defendants did not so carry and deliver the cattle, but that they negligently delayed the cars upon which the cattle were loaded at various places for many hours, which caused them great injury by reason of their being so confined in the cars and in muddy and insufficient pens and being so long without food and water; that defendants' servants handled them so roughly in loading and unloading and in feeding and watering them, and in causing the cars to be jerked and thrown around against each other and other cars, that many of the cattle were thrown down and against each other and the cars and bruised and injured and lost in flesh and value. The petition charges that seven of them were killed in the cars by this treatment, of the aggregate value of $175, and sixteen head of the aggregate value of $400 were so injured that they died after being unloaded at San Angelo,

and that the balance were so injured that they thereby lost in flesh and value $1 per head, or $385. The prayer was for judgment against both defendants for the sum of $960 with 6 per cent interest per annum from August 28, 1898, or in case one of the defendadnts should be found not in fault, then against the other. Judgment was against appellant alone for $960, with interest as prayed for.

Appellant, the San Antonio & Aransas Pass Railway Company, denied making any verbal contract with appellee, and alleged the execution of written contracts; that it was not the agent of the Gulf, Colorado & Santa Fe Railway Company, and that its sole undertaking was to deliver the cattle to the Gulf, Colorado & Santa Fe Railway Company at Cameron, and that the latter received same as a connecting or succeeding carrier and not as the agent of this defendant. That it was only liable for damages to said cattle on its own line by the terms of said contract; that this defendant safely and expeditiously transported the cattle to Cameron, Texas, the end of its line, and immediately upon their arrival there delivered same in good order and condition. That no damage occurred to the cattle between Karnes City and Cameron,— and prayed for judgment as against the Gulf, Colorado & Santa Fe Railway Company if any damages were adjudged against it.

The verdict and judgment were against appellant for damages as prayed for, and in favor of the Gulf, Colorado & Santa Fe Railway Company on its plea to the jurisdiction. There are no assignments of error which relate to the Gulf, Colorado & Santa Fe Railway Company and in so far the judgment will be affirmed.

Plaintiff filed a supplemental petition admitting the signing of the written contract attached to the answer, but alleged the following facts as to their signing: After the cattle were loaded and delivered to defendant at Karnes City, defendant's agent presented the contracts, demanded that they be signed, and refused to move them unless they were signed, and because of these circumstances he signed them. That at Cameron the Gulf, Colorado & Santa Fe Railway Company required him, and it became necessary for him, to sign contracts over its road from there to San Angelo. That there was no consideration whatever for the signing of the contracts, and they were signed under duress and compulsion. That if it should be held that the cattle were shipped under the written contracts and not under verbal contracts, then that the shipment was in fact a through shipment, as originally contracted between plaintiff and defendant's agent at Karnes City,—that although the written contracts call for the delivery to him of his cattle at Cameron and although at Cameron new contracts were required to be signed, yet in truth and in fact said shipment was intended by plaintiff and was received and acted upon by both defendants as a through shipment over their respective lines at a stipulated rate of 2 cents per hundred pounds.

By supplemental answer appellant denied the making of any verbal

.contracts; that plaintiff knew that defendant's agent at Karnes City had .no authority to make any but written contracts, etc.

First assignment of error: "The trial court erred in rendering any judgment whatever in this case, for the reason that said court had no jurisdiction over the subject matter, in this: That plaintiff in his petition seeks to and did in fact recover in this suit the sum of $960, with legal interest thereon from August 28, 1898, and therefore said suit and judgment rendered therein are for an amount which exceeds that over which the county court has jurisdiction."

The first amended original petition was filed November 27, 1899. The original petition is not in the record, and all we know of it is that it was filed January 26, 1899. The damages, if any, were sustained about August 28, 1898. At the time of filing the suit the amount sued for, say $960, with 6 per cent interest, could not have exceeded $1000. The cases of Schulz v. Tessman, 92 Texas, 488, and Baker v. Smelser, 88 Texas, 26, have decided that in cases like this the interest, if allowed, is regarded as damages. Watkins v. Junker does not, as we understand it, announce any different rule. It has been held also that interest as damages may be allowed, although not asked in the petition. Railway v. Greathouse, 82 Texas, 105. In testing the jurisdiction of a court the distinction between interest as interest, and interest allowed as damages, may become material.

The suit was filed at a time when 6 per cent interest on $960 would not have amounted to $1000. Consequently the court had jurisdiction. We can not know from this record what was originally sued for, but presumably it was not for more than is asked in the amendment. The county court having once acquired jurisdiction, would continue to have it to the maximum extent of its jurisdiction. Any amended petition which increased the amount so as to claim more than $1000 in damages (including interest as damages) thereon, which this does, would be improper and inadmissible (1 White & Wilson, section 1032), but would not necessarily have the effect of defeating the court's jurisdiction over the proper amount. Upon another trial plaintiff may amend his petition in this respect.

The twenty-third assignment is that the court should have given the following requested charge: "The plaintiff has failed to prove the contract alleged by him, and you are instructed to return a verdict for defendant." There may have been sufficient evidence to show an oral contract with defendant's agent to receive and transport the cattle to San Angelo; but written contracts were signed with reference to the cattle which were inconsistent with such oral contract. As to the circumstances under which these written agreements were entered into we have the testimony of only one witness, that of G. W. Barnett, a brother of plaintiff. He testified: "I executed the contract for the shipment of two carloads of these cattle, because I had business at San Angelo and wanted a pass to go there. I was authorized and directed by plaintiff to sign said contract. The cattle belonged to R. L. Barnett, who knew of

my desire to go to San Angelo and had two cars of the cattle billed in my name. We had this done because the railroad would pass only so many men under one contract; there were four of us who wanted to go, and we thought some of us might want to return before the others, and I did return before the others. John Elder, Sam Maddox, John Mc-Caughn, Emery Hall, R. L. Barnett and myself and others were present when the stock were loaded at Karnes City."

There were four of these written contracts, signed respectively by G. W. Barnett, R. L. Barnett, R. C. Ruckman, and J. W. McCaughn. The above is all the testimony we can find as to the signing of the four written contracts. It does not appear, as is usual in this class of cases, that the agent insisted on the papers being signed before allowing the cattle to be moved out, so that the shipper did not know the terms of the writings, and did not have time to read them. On the contrary it appears that plaintiff himself procured them to be executed, and had their execution in contemplation in shipping the cattle. According to his testimony respecting the oral negotiations with the agent, how are we to understand that four contracts were prepared by the agent, three of them with other parties than himself, unless the agent had been requested by plaintiff to do so? The only person who testifies on this subject says that plaintiff authorized and directed him to sign one of the contracts.

The only reasonable conclusion from the evidence is that plaintiff never understood nor contemplated that the oral negotiations constituted the contract under which the cattle were to be shipped, but that, on the contrary, he contemplated and expected written contracts to be entered into before the cattle left. We find no evidence, even, as to when the contracts were signed,—whether before or after loading. No circumstances of fraud, compulsion, want of time to read the contracts, etc., appear from any testimony in the case to entitle plaintiff to repudiate these written contracts. They appear to have been deliberately entered into, and under the foregoing circumstances must be taken as merging all previous understandings of the parties. By their terms defendant was not liable for injuries occurring beyond its line. The assignment under consideration, however, is not sustained because plaintiff pleaded the written contracts also, under which he may recover for what may have occurred on appellant's own line.

The fact that the waybill issued by defendant for the guidance of its employes denominated this as a "through live stock waybill from Karnes City to San Angelo via Cameron & G. C.," could have no effect upon the terms of the contracts with defendant. Neither could the shipping report signed by plaintiff and the Gulf, Colorado and Santa Fe Railway agent at Cameron.

We would not be justified in assuming, though it may be possible, that the testimony as to the contracts will be materially different on another trial. If the case be narrowed down to the obligations of defendant under the written contract, as it ought to have been at the last

trial under the testimony, it would be a useless task for us to consider and discuss the many exceptions of appellant to the charges.

There are a number of assignments which relate to testimony admitted. Witnesses should not be allowed, over objections, to testify to the questions concerning values at the place of destination unless they are shown to have knowledge of such subject. Railway v. Slaton, 49 S. W. Rep., 278. We do not think it would be necessary for witnesses acquainted with such values and stock generally, and who saw the cattle at point of destination, to have seen or known the cattle when shipped or en route, in order to testify to the value of such cattle at destination, in the condition they arrived there, and the condition they would have been in if properly carried, provided proper hypothetical questions were propounded. Railway v. Greathouse, 82 Texas, 109. But it has been held that the witness should state facts and not simply give his bare opinion as to the difference in values. Railway v. Wright, 1 Texas Civ. App., 404; Railway v. Ward, 2 Texas Civ. App., 599; Railway v. Hughes, 31 S. W. Rep., 412. Such a witness would be competent to testify, from the appearance of the cattle, as to what caused their condition, provided he gave the data upon which he based his opinion.

We are further of opinion that if it became material for any purpose to prove the time the train was due at Cameron, the declaration of the conductor was admissible. Railway v. Barnett, 12 Texas Civ App., 321. The waybills which defendant issued for the guidance of conductors, afforded no proof of partnership or agency in this case. It is unnecessary to lengthen this opinion.

Reversed and remanded as to appellant, the San Antonio & Aransas Pass Railway Company, and appellee, R. L. Barnett.

*Reversed and remanded.*