SAN ANTONIO & A. P. RY. CO. v. CHITTIM.†

(Court of Civil Appeals of Texas. March 1, 1911. On Motion for Rehearing, March 29, 1911.)

1. CARRIERS (§ 215*) — SHIPMENT OF LIVE STOCK—COMMENCEMENT.

A shipment of live stock begins when the cattle are received by the carrier in its pens preparatory to transportation.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 923; Dec. Dig. § 215.*]

2. CARRIERS (§ 218*) — CARRIAGE OF LIVE STOCK—CONTRACTS—OBLIGATIONS.

Though a contract requires the shipper of live stock to load, unload, feed, water, and attend to stock at his own expense and risk while in the yards awaiting shipment, and while in the cars or at feeding or transfer points, it is the duty of the carrier to furnish the shipper with the opportunity and facilities for properly watering the stock during transportation.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 928; Dec. Dig. § 218.*]

3. CARRIERS (§ 211*) — CARRIAGE OF LIVE STOCK—LIABILITY OF CARRIER.

The statute requiring the carrier to feed and water stock while in its custody as such implies that the carrier must be informed of the conditions rendering it necessary to feed and water, and ordinary care only is required, and the carrier's conduct to constitute negligence depends on the surrounding circumstances, and, where cattle are brought to the carrier for shipment in apparently good condition, the carrier is not liable for failing to furnish opportunities to water them, unless it is notified of the necessity thereof.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 926–928; Dec. Dig. § 211.*]

4. CARRIERS (§ 230*) — CARRIAGE OF LIVE STOCK—LIABILITY OF CARRIER.

Where a shipper of live stock notified the carrier of his desire to water the stock while in the pens awaiting transportation and the stock needed watering, the jury could find that the failure of the carrier to provide reasonable facil-

ities for watering the stock was actionable negligence.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 230.*]

5. CARRIERS (§ 229*) — CARRIAGE OF LIVE STOCK—MEASURE OF DAMAGES.

The measure of damages for live stock dying as the result of injuries caused by the negligence of the carrier is their market value at the place of destination at the time they should have arrived there.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 930, 963, 964; Dec. Dig. § 229.*]

On Motion for Rehearing.

6. CARRIERS (§ 219*) — CARRIAGE OF LIVE STOCK—LIABILITY OF INITIAL CARRIER.

A contract by the initial carrier of an intrastate shipment limiting its liability to its own lines is valid, though Rev. St. 1895, arts. 331a, 331b, make carriers jointly liable where the connecting carrier acquiesces in the contract made by the initial carrier, so that the employés of a connecting carrier were not within a petition charging negligence of the employés of the initial carrier.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 219.*]

7. CARRIERS (§ 230*) — CARRIAGE OF LIVE STOCK—LIABILITY OF INITIAL CARRIER.

Where, in an action against the initial carrier of an intrastate shipment of live stock, under a special contract limiting its liability to its own line, the petition demanded damages for injuries caused by the jolting and jerking of the cars by the rough handling of defendant's employés, and the testimony as to the damages by the operation of the cars by the initial carrier did not identify the extent of the damages from that cause, it was error to submit to the jury the issue of such damages.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 230.*]

Appeal from District Court, Bexar County; J. L. Camp, Judge.

Action by J. M. Chittim against the San Antonio & Aransas Pass Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Houston, Boyle, Storey & Davis, for appellant. Winchester Kelso and Swearingen & Tayloe, for appellee.

JAMES, C. J. J. M. Chittim alleged damages to two shipments of cattle shipped through from Karnes City, Tex., on appellant's line to Paloma, Tex., on the line of the Galveston, Harrisburg & San Antonio Railway Company, a distance of 160 miles, the lines connecting at San Antonio. The petition alleged substantially that on September 25, 1906, defendant received from him for shipment as aforesaid 330 head of cattle, and on September 29, 1906, 384 head, plaintiff paying to defendant as required of him, the entire freight charges in advance; that defendant provided and maintained pens at Karnes City station for holding said cattle preparatory to shipment, and, in connection with its pens, it was its duty to provide and furnish water for cattle so placed therein preparatory to shipment, also it was its duty to provide reasonably safe and suitable cars for transport-

ing the cattle; that defendant agreed to have the cars there at a certain time, and, by reason of delay in this respect, the cattle were detained in the pens three hours, and by reason of the defective condition of the cars furnished they were delayed two hours longer; that the cars were roughly handled en route by defendant's employés, causing injuries to the cattle; that, as the result of all these matters of alleged negligence, plaintiff sustained damages in respect to said shipments in the sum of $5,000. The court did not submit any question of damages in reference to defective cars, but submitted the case only upon the allegations in reference to providing water at Karnes City and the violent handling of the cars en route. There was a verdict for plaintiff for $2,000.

The first assignment complains of the refusal of a general peremptory charge for the defendant. The second, of the refusal of an instruction to find for defendant on plaintiff's cause of action on account of the cattle not being watered at Karnes City. The fifth complains of the refusal of an instruction that plaintiff was not entitled to recover for injuries to the cattle from jolting and jerking of the cars. The sixth complains of the charge of the court in submitting the question of damages resulting from the jolting and jerking of the cars. These assignments, taken together, contend that upon the evidence plaintiff was not entitled to recover for both or either of said forms of negligence. These shipments were between points in this state, and appellant in its brief admits that it was liable to plaintiff for damages to the cattle occurring through negligence on the line of its connecting carrier as well as upon its own. But appellant contends that the case made by plaintiff's petition alleges and claims damages through the act of defendant and its employés in regard to the jerking and jolting of the cars. We find this to be so. The trial court appears to have recognized this, and submitted the case on this issue only in reference to appellant's line and the acts of its employés. Appellant in this connection contends that it was impossible from the evidence for the jury to separate and ascertain what damage, if any, in this regard occurred on its line. We find this also to be true. Plaintiff's agent who accompanied the stock testified on this matter: "There was about 17 head of said cattle badly injured, some of the cattle after being loaded at Karnes City, San Antonio, Sabinal, and at Spofford, Tex. There were 17 more of said cattle injured while in transit. There was in shipment one steer killed between San Antonio and Sabinal by being jerked down in San Antonio and trampled on in transit. I rode on same car from San Antonio to Sabinal trying to save the steer. There were several more in the same car

that were injured in transit so they could not walk, and in shipment of September 26th there was one dead in car No. 1225, and several more injured in same car and several injured in other cars also." It is plain that said testimony was insufficient to identify what injuries, if any, the cattle received from jerking and jolting upon the line of the defendant. San Antonio was defendant's terminus, and the other places mentioned by the witness were on the line of the other carrier. Consequently we must hold that the court erred in submitting the case for damages on that issue. This necessitates a reversal of the judgment.

In view of another trial and of appellant's brief there are other matters to consider.

It is insisted that, under the facts and circumstances of this case, defendant was not liable for negligence in respect to furnishing facilities for watering this stock at Karnes City. The pleading of plaintiff was we think sufficient to present the issue as it was submitted by the court. As to the evidence, it appears without dispute that, when the cattle were driven there from a ranch about 11 miles distant, they had been without water for 24 hours when placed in the pens. There was no water in the pens for the cattle. Chittim testified that he was there on each occasion, and that he made complaint about there being no water. There was nothing to contradict his statement. There was testimony showing that the first shipment was placed in the pens about noon of September 25th and were loaded out between 7 and 9 a. m. on the 26th, and that similar delay occurred in regard to the second shipment, but we observe that the petition alleged only a delay of five hours in loading out these shipments after they were received in the pens, and plaintiff should be held to his allegation. After they were shipped, they were carried through to Paloma without watering, so that, when they reached their destination and were turned out, they overdrank and became injured and killed by water foundering in consequence of having been "water starved." The evidence shows that had they been watered at Karnes City this would not have resulted. If it became the duty of defendant to furnish the facilities for watering the stock at Karnes City, then a negligent failure in this respect was according to testimony the proximate cause of such loss to plaintiff. The contracts provided that the shipper would load, unload, "and feed, water, and attend to the stock at his own expense and risk, while in the stock yard of appellant awaiting shipment and while in the cars, or at feeding or transfer points or when unloaded for any purpose." Under all the authorities, the shipment begins when the cattle are received by appellant in its pens preparatory to transporting. Our statute allows the carrier to specially contract as above. This also is settled. Its duty, where there is such special contract, is simply to furnish the shipper or his agent with the opportunity and facilities for properly watering the stock during the course of the transportation.

Appellee relies upon the opinion in Railway v. Montgomery, 16 S. W. 178, for the proposition that, whenever in the course of transportation it becomes necessary to water stock, the shipper need not request it, but it is the duty of the carrier, without request, to provide him watering facilities as well as the opportunity to use them. As the stock in question needed watering at the starting point, it seems to be contended on the authority of the above case that the duty was upon appellant to have water in the pens for these cattle, without any request or notice from the shipper, and regardless of knowledge on the part of defendant's agent of the fact that the cattle needed watering before starting. The statute does not require the carrier to keep water on hand in its pens at all times and under all circumstances. If it did, the failure to do so could be said to be negligence per se. The statute requires it to feed and water stock sufficiently while in its custody as carrier, and this implies that the carrier must in some way be informed of the conditions rendering it necessary as to time and place. Ordinary care only is required in such matter, and the carrier's conduct, to constitute negligence, depends on the surrounding circumstances influencing the conduct, as in other cases. The case above cited, Railway v. Montgomery, was also likewise one of special contract requiring the shipper to feed, water, etc.; but it was a shipment over a long distance, necessitating feeding and watering at intervals, and the failure to afford opportunities for watering stock occurred en route. It was held that it was the carrier's duty to furnish the necessary facilities to the shipper for carrying out the contract, and that it was bound to see to it that the necessary facilities and opportunities were afforded, without any request on the part of the shipper. There was reason for such holding in that case from the fact that in the course of a long journey requiring several days the carrier and its employés doubtless becomes acquainted with the needs of the animals as to feed and water, as well as the shipper or his representative, and should provide suitable stopping places for that purpose and afford the proper opportunity, without any request to do so. But, when cattle are brought to the carrier for shipment after being without water for, say, 24 hours, as in this instance, and in apparently good condition (as the proof showed them to be here down to the time when they were loaded on the cars), how is the carrier to know of the need of the cattle for water, unless in some way informed of it? The question is really an immaterial one on this record be-

cause plaintiff testified, and was not contradicted, that he made complaint of there being no water in the pens, which we think must have been understood as a notification that the cattle were in need of water. It is in view of another trial that we express ourselves on this question, and we conclude that in the absence of a request or notification in some way, or some proof of knowledge of defendant or its agent that the cattle should have been watered before starting them from Karnes City, defendant could not be held for negligence in that particular. They might be held in the pens so long that that fact would suggest the necessity of providing water for them. There is much force in appellant's contention that, when live stock is tendered for shipment, the carrier may assume that they are then in proper condition as to feed and water to be started on their journey, in the absence of information derived by it in some way to the contrary. It would certainly be unjust to hold that a party may tender cattle for shipment already famishing for water, and, concealing such fact from the carrier, allow the cattle to be started, and then recover damages for its failing to provide water for them before they started. The carrier may, however, obtain knowledge of the wants of the cattle by other means than by notice or request from the shipper, as for example from the detention of them in the pens for so long a time as would suggest the necessity. These views are to some extent supported by the opinion in Railway v. Stribbling, 34 S. W. 1003. The court charged the jury to find for plaintiff on this issue, if the defendant failed to provide reasonable facilities for watering the cattle at Karnes City, and such failure was negligence. There being notice of plaintiff's desire to give them water at that place, and it being shown that they were in need of it there, it was permissible for the jury to find that the failure was negligence under the circumstances. There was no error in the instruction, and we here overrule the eighth and ninth assignments.

In view of what has been said, it is unnecessary to notice the remaining assignments of error, except the eleventh, which complains of the measure of damages submitted as follows: "Should you find for the plaintiff under the instructions herein given you, then you will find for the plaintiff the market value of said cattle at Paloma at the time they should have arrived there for such of the cattle as died by reason of the injuries, if any, caused by the aforesaid negligent acts or the defendant, if any, as such acts are hereinbefore defined." The above had reference to the cattle that died and the proper measure of damages in that regard was as charged. There was testimony of such market value.

Reversed and remanded.

## On Motion for Rehearing.

It appears from the case of G., H. & S. A. Ry. Co. v. Jones, recently decided by the Supreme Court, 134 S. W. 329, that the statute (Rev. St. 1895, arts. 331a, 331b) has no application to the shipment in this case; that the clause in the contract by which defendant limited its liability to its own line was valid; and that consequently the employés of the Galveston, Harrisburg & San Antonio Railway Company were in no sense agents or employés of defendant. Under the allegations of the petition, the damages sued for from jolting and jerking of the cars were those caused by defendant's employés, and the testimony as to damage to the cattle by the operation of the cars by defendant's employés was not such as identified the extent of the damages so caused. This element of damages it was therefore not proper to submit to the jury.

Motion overruled.