SAN ANTONIO & A. P. RY. CO. v. GRADY.
(No. 5364.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 16, 1914.)

1. TRIAL (§ 191*)—INSTRUCTIONS—EVIDENCE.

Where, in an action against the initial carrier for negligent handling and delay in transportation, the shipper testified that he made a contract for through shipment, while the carrier introduced a bill of lading limiting its liability to damages accruing on its own line and showed no damage or delay occurred on its line, a charge that the contract was for through shipment was on a material issue and assumed a controverted fact.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. § 191.*]

2. CARRIERS (§ 180*)—INTRASTATE SHIPMENT—INITIAL CARRIER—LIMITATION OF LIABILITY.

An initial carrier of an intrastate shipment may limit its liability for damages occurring on its own line and in tendering the shipment to the connecting carrier for transportation to the point of destination.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 815–828; Dec. Dig. § 180.*]

3. EVIDENCE (§ 178*)—SECONDARY EVIDENCE—LOSS OF PRIMARY EVIDENCE.

Where a carrier did not contend that it did not issue contracts for return transportation of a shipper who lost the contracts, the shipper could testify as to their contents.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 580–594; Dec. Dig. § 178.*]

Appeal from San Patricio County Court; P. A. Hunter, Judge.

Action by R. J. Grady against the San Antonio & Aransas Pass Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Kleberg & Stayton and David M. Picton, Jr., all of Corpus Christi, for appellant.

CARL, J. Appellee, R. J. Grady, sued appellant, San Antonio & Aransas Pass Railway Company, for damages to two cars of watermelons shipped from Sinton, Tex., one car to Corsicana, Tex., and the other to Ennis, but diverted in transit to Hillsboro, Tex. It is alleged that on account of the negligent handling and delay of the railway company the melons in the car that went to Corsicana were ruined, bursted, and bruised in such a way that they were worthless, but would have been worth $140 on the market if they had been properly and promptly delivered; and from the car that went to Hillsboro 171 had been stolen or were missing, valued at $39.20. The plaintiff alleged that both were through shipments, and that he was compelled to pay the freight charges before he obtained the cars, but the freight paid on the Corsicana car was returned to him. Plaintiff also alleges that the railway company contracted to give him free transportation with the shipments, but failed to do so, and he was compelled to pay $20 for railway fare. The total amount sued for was $199.70, and that sum he recovered.

Appellant pleaded, among other defenses, a contract limiting its liability to its own line, which terminated at Houston, Tex., and to delivery there to its connecting carrier, which in this instance was the Houston & Texas Central Railway Company. Both cars were loaded at Sinton, consigned to the plaintiff, and the destination of San Antonio & Aransas Pass car No. 7143 was Corsicana, routed by way of Houston and thence of the Houston & Texas Central Railway to point of destination, while the other car was billed to Ennis, but changed to Hillsboro. Both contracts or bills of lading show that the cars were shipped from Sinton to Houston, and a clause is contained in each contract, as follows:

"Section 2. If shipment is destined to a point off this company's road, it is agreed that this is no contract for through shipment, and this company's liability as a common carrier shall terminate on tender of delivery to a connecting carrier."

Other issues will be stated in the course of the opinion.

The first assignment complains of the action of the court in giving paragraph 9 of the charge to the jury, which is as follows:

"You are further instructed that plaintiff's contract with the defendant shows a through shipment of said melons, and the defendant cannot limit its liability for any damages occurring to said melons, on account of the injury or damage to said melons, occurring on any connecting lines over which said melons were transported. If said melons were lost or damaged anywhere en route to their destination, the defendant in this case would be liable for the full amount of the damages which plaintiff had sustained, regardless of whether the loss or injury occurred on its own line, or on the line of the connecting carrier transporting said melons."

The objections are: (a) Because it states an incorrect principle of law; (b) because the first part thereof is on the weight of the evidence; (c) because the first part thereof is on the weight of the evidence as to any contract of carriage entered into between plaintiff and defendant which had not been introduced in evidence during the trial of the suit; and (d) because the same is an erroneous construction as a matter of law of the contracts of carriage introduced in evidence by defendant covering the shipments sued on by plaintiff.

[1] The question of whether or not the contracts of carriage entered into between the parties were contracts for through shipments was a question for the jury, as the issues were made by the pleadings. The plaintiff alleged that he made contracts for through shipments direct from Sinton to points of destination, and to this he testified. But the railway introduced in evidence the two contracts or bills of lading, one signed by appellee and the other by his agent or representative, J. T. Patterson. Both of these bills of lading, or contracts, showed the shipments were made from Sinton to Houston, and both contained the above clause limiting the lia-

bility of appellant to damages accruing on its own line and to a delivery to the connecting carrier to point of destination.

The evidence, then, was conflicting as to what the contract of carriage was, and it cannot be said that this part of the charge was not material, because appellant had offered evidence tending to show that there was no damage or delay that occurred on its line or up until the cars were delivered to the connecting carrier. So when the court charges that the contracts were for through shipment, such charge is certainly upon a material part of the controversy. A charge which assumes a controverted fact is erroneous. T. & P. Ry. Co. v. Murphy, 46 Tex. 366, 26 Am. Rep. 272; Linney v. Wood, 66 Tex. 22, 17 S. W. 244; H. & T. C. Ry. Co. v. Nixon, 52 Tex. 19; Overall v. Armstrong, 25 S. W. 440; Boaz Co. v. Schneider, 69 Tex. 128, 6 S. W. 402; Lake, Tomb & Co. v. Copeland, 31 Tex. Civ. App. 359, 72 S. W. 99.

[2] That an initial common carrier of an intrastate shipment of goods may limit its liability for damages to those occurring on its own line of railway and in tendering the shipment to a connecting carrier for transportation to point of destination seems to be settled. G., H. & S. A. Ry. Co. v. Jones, 104 Tex. 92, 134 S. W. 328; S. A. & A. P. Ry. v. Chittim, 135 S. W. 747; Elder Dempster Co. v. Ry. Co., 105 Tex. 628, 154 S. W. 975; David Hunter v. So. Pac. Ry. Co., 76 Tex. 195, 13 S. W. 190. A similar case was before this court in S. A. & A. P. Ry. Co. v. Barnett, 27 Tex. Civ. App. 502, 66 S. W. 474, and Mr. Chief Justice James held that in the absence of a fraud, compulsion, want of time to read the contracts, etc., the shipper could not repudiate the contract of shipment so signed. None of these matters are alleged in this case. On the other hand, "they appear to have been deliberately entered into, and under the foregoing circumstances must be taken as merging all previous understandings of the parties. By their terms defendant was not liable for injuries occurring beyond its line." So says Chief Justice James in the Barnett Case, supra, and the court makes the further observation in that case:

"The fact that the waybill issued by defendant for the guidance of its employés denominated this as a 'through live stock waybill from Karnes City to San Angelo via Cameron & G. C.,' could have no effect upon the terms of the contracts with defendant. Neither could the shipping report signed by plaintiff and the Gulf, Colorado & Santa Fé Railway agent at Cameron."

In G., H. & S. A. Ry. Co. v. Jones, supra, the court says:

"Upon its face the contract of shipment expresses the agreement to be that the first company is to transport the cattle to the end of its line at Placedo and there deliver the same to the Galveston, Harrisburg & San Antonio Railway Company, limiting the liability of each company to damages arising upon its own line. To bring a contract of this character within the terms of article 331a, the contract entered into by the first carrier must be for carriage from the point of shipment to the destination, and the shipment must be received and carried by the connecting carriers under that contract. There being in this case no contract for through shipment, the fact that the second company received and transported the cattle is not sufficient to create the joint liability declared by article 331a, and the Court of Civil Appeals erred in so holding. In order to bind the second or subsequent companies jointly with the first, or with any of the other companies, there must be something more than receiving and transporting the goods, or property, because the law requires the carrier to so receive and transport such freight when tendered to it. Ft. Worth & D. C. R. R. Co. v. Williams, 77 Tex. 125 [13 S. W. 637]."

The court further said, in that case:

"The said railroad company also assigns as error the refusal of the court to give this charge to the jury: 'You are instructed that the defendant, St. Louis, Brownsville & Mexico Railway Company, is a common carrier, and as such may limit its liability to damages occurring on its own line, and cannot be required to furnish cars to go beyond its own line, in the absence of a contract so requiring same. If you find that the contract of shipment in question limits the defendant's liability to damages occurring upon its own line, then in arriving at the amount of damages, if any, sustained by plaintiff, you are to look only to such damages as may be shown to have occurred upon defendant's own line of road, and damages, if any, sustained in transferring said cattle to connecting carriers; and if you further find that no damages, such as alleged by plaintiff, occurred upon this defendant's line of road, or in transferring said cattle to connecting carriers, you will find your verdict in favor of this defendant.' The charge refused presented a correct statement of the law applicable to the facts of this case, and we are of the opinion that it should have been given as a guide to the jury in determining what damages, if any, would be properly chargeable to that railroad company."

A similar charge was requested in this case and refused.

In Hunter v. So. Pac. Ry. Co., supra, the court has this to say as to liability for freight shipment:

"And the fact alone that it received goods marked for a place beyond its own terminus does not import an agreement to transport to the destination named as a common carrier. Laws on Carr. § 240. Those cases which hold that such fact alone is to be regarded as showing that the railroad had contracted for the delivery of the freight at the point of destination, and as showing that it had made arrangements with connecting lines, concede that this is not so where it expressly limits its liability. Ala. S. S. Ry. Co. v. Mt. V. Co., 84 Ala. 173 [4 South. 356]; Falvey v. Railway, 76 Ga. 597 [2 Am. St. Rep. 58]. The reason a railroad is not liable beyond its own line as a common carrier, in the absence of an express contract, is because it is not a common carrier beyond its own line. The law attaches to it no liability as a common carrier beyond the terminus of its own line, and does not compel it to act as common carrier over other lines not within its control. Railway v. Baird, 75 Tex. 256 [12 S. W. 530]. Hence, when this liability does attach, it must be by virtue of some contract assuming it. In the case under consideration, the stipulation excepted to expressly releases it from such liability. It was lawful for the defendant in the contract of shipment to so decide. Railway v. Baird, supra."

The first five assignments are sustained, since they all raise substantially the matters hereinabove discussed.

[3] The matters complained of in the sixth assignment are without merit. Appellee testified that he received written contracts for his transportation, the first of which he presented when ready to return, and it was refused. The second time, he presented a duplicate, the original being lost, and this was refused. It is not contended that appellant did not issue such contracts for return transportation, and appellee, having lost these papers, and that fact appearing, could testify as to the contents of the papers. This assignment is overruled.

The judgment is reversed and the cause remanded.